Frahn Edward SHACKELFORD,
Kenneth Johnson, and Alexis
Miller, Appellants,

v.

STATE of Indiana, Appellee.

No. 585S211.

Supreme Court of Indiana.

Oct. 9, 1986.

Robert R. Garrett, Daniel L. Bella, Diane McNeal, Appellate Div., Crown Point, for appellants.

Linley E. Pearson, Atty. Gen., Jody Cusson-Cobb, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendants-Appellants Shackelford, Johnson, and Miller all were found guilty by a jury in the Lake Superior Court of the crime of murder. Superior Court. The trial judge subsequently sentenced Appellant Johnson to forty-four (44) years; Appellant Miller to forty (40) years; and Appellant Shackelford to forty-two (42) years. Appellants raise the following issues for our consideration in this direct appeal:

1. denial of Appellant Johnson's motion for a continuance for time to secure change of clothing to appear in court;

2. denial of Appellant Johnson's motion for severance;

3. denial of Appellants Miller and Shackelford's motion for a mistrial;

4. denial of Appellant Miller's motion for judgment on the evidence; and

5. improper admission of evidence.

The facts tend to show that the victim was disabled at the time of the crime. Appellant Alexis Miller and her two brothers Frahn Shackelford and Kenneth Johnson, entered into a plan to rob the victim. Miller brought the victim to her family residence and took him to the basement of the home. The plan was that she was to receive money and drugs from the victim and her two brothers were to keep the victim's vehicle. Shackelford and Johnson were hiding in the basement while Miller was there having sex with the victim. The two came out of hiding, grabbed the victim, and began beating him about the head with pop bottles. It became a joke between them that it took more than one blow to the victim's head to break the bottle. The victim's blood was spattered over the walls and carpet as a result of the beating he received. Miller then went through the victim's pockets and wallet, attempting to locate all of his money and pills. Miller remained at the residence to clean up while Johnson and Shackelford put the victim in a car and left to dump the body somewhere. Shackelford and Johnson removed the victim from the automobile, wrapped a belt around his neck, and strangled him. They then removed the belt and choked him with a rope. Thinking he was dead, they then packed him in the snow and left the area. Upon their return to the family residence, Miller voiced her concern that they had not gotten all of the victim's money, suggesting they should go back and search his boots. Shackelford and Miller returned to where they had dumped the victim. They were surprised to find him still alive and took turns stabbing him until they were convinced he was dead. When they arrived back home, the three of them divided up the money and drugs they had gotten from the victim.

I

On the morning of trial, Appellant Johnson informed the court he did not have adequate street clothing to go to trial and asked the court for a continuance so that he could obtain other clothing. Johnson claimed he had clothing that was taken from him when he was admitted to the jail nine months earlier but they needed cleaning and would not be suitable to wear to court. The court reminded him that at a pretrial hearing some weeks before the morning of trial, the court informed him he should make arrangements to obtain proper clothing since he was not required to appear in court in jail garb. Johnson stated that members of his family were not able to, or at least did not make an effort to provide clothing for him to wear in court. The trial judge said he would give Johnson time to obtain his clothes from the basement and wear them if he desired, but would not continue the trial further. Ap-

pellant does not claim the clothing he wore before the jury was identifiable as jail clothing. In fact, the trial judge remarked that the clothing Appellant was wearing did not appear to be jail clothing since there was nothing on the clothing to identify it as such. Johnson's counsel believed the clothing resembled jail garb. However, no indication was given as to what the resemblance was since there was no writing on the clothing which designated it as jail property, and the co-defendants were not dressed in similar clothing. Johnson's contention is that his street clothing held in the basement of the jail was not satisfactory to him so he did not take advantage of the opportunity to change into it that morning before trial. The record however, does disclose that Johnson did change some, but not all, of his clothing.

■ In order for there to be a constitutional violation resulting from a defendant standing trial in jail attire, the defendant must show he was compelled to wear jail attire, and that it was readily identifiable as such. *Estelle v. Williams*, 425 U.S. 501, 512, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126, 135; *Gregory v. State* (1980), 274 Ind. 450, 412 N.E.2d 744, 746; *Lyda v. State* (1979), 272 Ind. 15, 395 N.E.2d 776, 782. Here, Johnson has not shown that he was compelled to go to trial in the clothes in which he appeared before the jury, nor does he allege or show that this clothing was readily identifiable as jail attire. He was given ample opportunity to obtain clothing he found adequate and more desirable but failed to do so. The trial court did not err in denying a further continuance for that purpose.

## II

Prior to trial, Appellant Johnson filed a motion for severance requesting that he be tried separately from his two co-defendants. He contemplated that statements made by them would be put into evidence. His motion for severance was denied. Johnson now claims by denying his motion to separate, he was prejudiced by a witness' testimony of statements made by co-defendant Shackelford implicating Johnson in the commission of this crime.

■ At trial, State's Witness Anthony McGee testified he had a conversation with Shackelford, Johnson, and one David Lester, in an automobile on the way to Kankakee, Illinois. McGee stated that during the course of the conversation, Johnson and Shackelford both described to him actions they took in committing this crime upon the victim. Johnson was a party to the conversation and made many statements about his and Shackelford's participation in the crime. In turn, Shackelford made statements about his part in the crime and also told of things Johnson did. Johnson now claims that Shackelford's statements implicating Johnson were improper since Shackelford did not testify, and that Shackelford's statements inculpating Johnson violated Johnson's Sixth Amendment right to confront witnesses, found to be improper by the United States Supreme Court in *Bruton v. United States* (1968), 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476. Although Johnson is correct in his interpretation of *Bruton*, he has failed to show that *Bruton* is relevant to the fact situation here. McGee did not testify about a statement given by Shackelford that implicated Appellant Johnson. McGee testified to a conversation had with Johnson and Shackelford, in which both of them described the actions and events of this crime, and both made admissions as to their part in it. The statements are admissible against Johnson under the admissions against interest hearsay exception, pursuant to *Cooper v. State* (1984), Ind., 461 N.E.2d 1119, 1121, and under the adoptive admission hearsay exception in *Harris v. State* (1981), Ind., 425 N.E.2d 154, 156, and *Robinson v. State* (1977), 266 Ind. 604, 611, 365 N.E.2d 1218, 1223, U.S. *cert. denied* 434 U.S. 973, 98 S.Ct. 527, 54 L.Ed.2d 463, *reh. denied;* 434 U.S. 1041, 98 S.Ct. 785, 54 L.Ed.2d 792 (1978). Furthermore, Johnson's involvement in this conversation goes even further than the holdings in *Harris* and *Robinson, supra,* as they refer to a situation where an accusation against the

defendant is made and he maintains silence without denial. Here, Johnson did not remain silent but joined in the conversation, agreeing with what Shackelford said and adding his own commentary. McGee's testimony therefore was admissible against Johnson and Shackelford equally, and it would have been so had Johnson been tried separately or as a co-defendant with Shackelford. Furthermore, Johnson did not object to any of McGee's testimony on the grounds he now presents here. His contention of error on this issue therefore has no merit.

### III

Appellant Johnson testified in his own behalf during the trial. Appellants Miller and Shackelford did not. During final argument to the jury, Johnson's counsel stated: "You're probably wondering what about Alexis (Appellant Miller) and Frahn (Appellant Shackelford). Their testimony would have been the same as Johnson's." The Prosecuting Attorney immediately objected to this testimony, stating that it was an improper comment. Both Miller and Shackelford then moved for a mistrial, claiming they had been put in peril by counsel's remark regarding their failure to testify.

 The trial judge has the discretion to determine whether to grant a mistrial, and a defendant must demonstrate that he or she was placed in a position of grave peril to which they should not have been subjected and which cannot be cured by any means. *Wallace v. State* (1983), Inc., 453 N.E.2d 245, 247, *reh. denied* (1983); *Morgan v. State* (1981), 275 Ind. 666, 419 N.E.2d 964, 967. The trial court denied the mistrial motions and admonished the jury to disregard the statement, thereafter polling the jury. Each of the jurors said they could set aside the statement and decide the case without considering that Appellants Miller and Shackelford did not testify. Ordinarily an admonition to the jury is presumed sufficient to protect a defendant's right and remove any prejudice created by a remark such as this. *Wallace, supra,*

*Morgan, supra.* It, of course, depends on the facts and circumstances of each case to make this determination. Here, Johnson's defense counsel apologized for the statement and said he did not intend to refer to either Appellant's failure to testify but, rather, had intended to show the jury that, "We had in my opinion bored the jury enough with the testimony that was going on.", again apologizing for any problems he had created. The trial court offered to give a final instruction on the subject, but defense counsel refused, claiming they did not want any further emphasis on the subject. Further, the record shows the trial court had instructed the jury on this subject in the preliminary instructions at the request of the Appellants, and that the jury was questioned about this subject during *voir dire*. Considering the facts and circumstances here, and the nature of the statement, it does not appear Appellants Miller and Shackelford were placed in such a position of peril from counsel's statement that such was not cured by the court's admonition.

### IV

 Appellant Miller moved for a judgment on the evidence at the close of the State's case, claiming there was insufficient evidence connecting her with the robbery that resulted in the victim's death. Miller's contention is based on testimony that after the victim's body was left by Johnson, Shackelford, and Lester, both Johnson and Shackelford returned to search the victim's boots for more money and, at that time, caused his death by stabbing him. Thus, Miller claims she did not take part in this second robbery which resulted in the victim's death. There is no merit to this argument. The facts show that Miller was the instigator in conspiring with Johnson, Shackelford, and Lester, and took part in the severe beating and robbery of the victim at the family residence. After Johnson, Shackelford, and Lester returned to the home, it was at Miller's insistance that they returned to search his boots to find more money. When persons

act in concert to commit crimes such as those committed by these appellants, the acts of each can be imputed to the others. Each is liable for everything done by his confederates which follows incidental to the execution of the common design even though it was not originally intended as part of the scheme. *Lowery v. State* (1985), Ind., 478 N.E.2d 1214, 1229, *cert. denied,* — U.S. —, 106 S.Ct. 1500, 89 L.Ed.2d 900 (1986). The court therefore properly denied Miller's motion for judgment on the evidence. *See Deneal v. State* (1984), Ind., 468 N.E.2d 1029, 1031; *Faught v. State* (1979), 271 Ind. 153, 160–61, 390 N.E.2d 1011, 1016.

V

■ Finally, Appellant Miller contends it was reversible error for the court to admit State's Exhibit No. 40, a picture of the victim's neck wound. The photograph in question was taken prior to any autopsy procedures. The picture showed the wound on the neck and also portrayed a hand holding a ruler that showed the size of the wound. The photograph was supported by testimony that it was a true and accurate representation of the scene it intended to portray. There was testimony concerning this wound to the victim and testimony that these Appellants inflicted the wound. The Exhibit was relevant evidence and the trial court did not err in permitting its admission. *Wagner v. State* (1985), Ind., 474 N.E.2d 476, 490; *Wilson v. State* (1978), 268 Ind. 112, 117. 374 N.E.2d 45, 48.

The trial court is affirmed.

GIVAN, C.J., and DeBRULER, SHEPARD and DICKSON, JJ., concur.