**Hilma Marie WITTE, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 64S00–8605–CR547.

Supreme Court of Indiana.

Dec. 8, 1987.

Dale Allen, Deputy Public Defender, Porter County, Valparaiso, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant Hilma Marie Witte was found guilty by a jury of murder and attempted murder and was sentenced to concurrent terms of fifty (50) years. She raises five (5) issues for our consideration in this direct appeal:

1. restricting cross-examination of State's witnesses;

2. alleged giving of additional instructions to the jury during deliberations;

3. refusal to give Appellant's tendered instruction No. 1;

4. sentencing; and

5. sufficiency of the evidence.

The evidence showed that Appellant was married to the victim, Paul Witte. They had two sons, Eric and John (Butch) Witte. For approximately two years prior to September 1, 1981, Appellant made comments to her family concerning her desire to be free of Paul. During the summer of 1981 Appellant resolved Paul should be killed. He had been physically abusive to her and to their two sons and she thought the property settlement she could expect from a divorce would be inadequate. Financial problems arose which added to the contention. Appellant and Paul had taken out a loan to buy some furniture, but Appellant had used the money for other purposes. Paul was, with increasing anger, demanding to know when the furniture would be delivered.

Appellant then began lacing Paul's food with rat poison and Valium, to which she thought he was allergic. Appellant talked to her son Eric about him killing Paul, suggesting that Eric either shoot Paul or bludgeon him with a hammer. Appellant wanted Eric to perform the murder because as a juvenile, if caught, he would be subject to a lesser penalty than would Ap-

pellant as an adult. Eric continued to decline.

The poisoning did not have the desired result and finally on December 1, 1981, Appellant decided this was the day Paul must die. She demanded that Eric shoot Paul. When Eric declined, Appellant threatened to commit suicide if Eric did not shoot Paul. Appellant announced she was leaving the house and would not return until Eric had killed Paul. Appellant left and later telephoned Eric, demanding to know whether he had shot Paul yet. When Eric responded he could not do it, Appellant threatened not to return home unless Paul was dead. Eric then took a pistol and killed Paul by shooting him in the head while he was sleeping on the living room sofa.

After the shooting, Eric gave a statement to the Indiana State Police indicating he had tripped or stumbled while carrying the gun and accidentally shot Paul. The investigation was closed at that time but was reopened on November 14, 1984, as a result of an investigation into the death of Elaine Witte, Paul's mother, in LaPorte County, Indiana. John then made a statement to the police concerning Paul's death. Also, Margaret O'Donnell, Appellant's mother, made a new statement and Eric admitted his involvement in Paul's death. John, Margaret O'Donnell, and Eric each stated Eric shot Paul while Appellant was absent from the home. The only foreign substance found in Paul's body was acetaminophen, commonly known as Tylenol.

## I

Appellant claims the trial court erred by unduly restricting her cross-examination of State's witnesses John Witte, Eric Witte, and Margaret O'Donnell. A pre-trial motion *in limine* was granted, which ordered defense counsel not to refer to certain matters concerning the three State witnesses and ordered Appellant's witnesses to refrain from mentioning the matters. The ruling in effect prohibited Appellant from presenting evidence on or questioning the three witnesses regarding prior mental and/or emotional afflictions;

treatments rendered and diagnoses of such afflictions; prior commitments to mental hospitals; alcohol and drug abuse; and expert testimony regarding the effect of such conditions and/or activities on the credibility of the witnesses. The trial court indicated he would not relax his order as he felt all of those matters were irrelevant.

Subsequently, defense counsel indicated he would make offers to prove at the appropriate times during trial. On several occasions defense counsel made offers to prove, outside the hearing of the jury, concerning the matters that were restricted by the motion *in limine*. The offers to prove did not detail the evidence that would have been brought forth. Rather, the offers to prove referred to specifications in the motion *in limine* and informed the court of counsel's intention to ask the witness questions on those specifications. The offers were refused by the trial court. No questions were asked of the witnesses regarding these subjects. Although Appellant's attempts to preserve error were not as complete as they might have been, the parties consider the attempts adequate to preserve this issue for review on appeal, because the trial court's order *in limine* was overly broad.

In support of her contention that she was unduly restricted in cross-examination of these witnesses, Appellant cites *McIntyre v. State* (1984), Ind.App., 460 N.E.2d 162, *trans. denied*, and *Higginbotham v. State* (1981), Ind.App., 427 N.E.2d 896, *overruled on other grounds* in *Micinski v. State* (1986) Ind., 487 N.E.2d 150, 154. In *McIntyre*, where the victim testified only after the trial court threatened punishment for contempt of court, it was reversible error for the trial court to refuse to permit defense counsel to cross-examine her, within reasonable limitations, to show her reluctance to testify and the coercive action of the trial court. In *Higginbotham*, reversible error occurred when defense counsel was not allowed to cross-examine a police officer about conduct by the defendant which may have indicated the police officer's belief as to the defendant's state of intoxication at the time of the events lead-

ing to a charge of driving under the influence and causing death. In both *McIntyre* and *Higginbotham,* the proposed cross-examination would have directly affected the credibility of the witnesses' testimony, and thus, those cases are distinguishable from the instant situation.

Here, there is no showing that cross-examination of the witnesses on the subjects of their mental and social problems would have put any of their testimony into question. Appellant did not claim during trial nor does she claim on appeal that any of the witnesses were under the influence of drugs or alcohol or a mental disability at the time of the incidents so that their ability to recall the facts they were testifying about might be questionable. Nor does Appellant claim that while the witnesses were testifying they were under any such disability that would affect their credibility. Rather, Appellant contends these areas of inquiry were proper on cross-examination to impugn the character and impeach the credibility of the witnesses. Appellant does not point to any testimony that would have been affected by reference to any of this background information regarding the mental and social problems of the witnesses. The information was directed only to a general assessment of the credibility and character of the witnesses. Witnesses may be impeached as to character only by means of evidence of community reputation, or by proof of conviction of specified crimes. *Randall v. State* (1983), Ind., 455 N.E.2d 916, 928. Since Appellant tried to impeach the character of the witnesses impermissibly by raising matters of character, neither by reputation nor by proof of conviction of specified crimes, the trial court did not abuse its discretion in limiting the cross-examination to the extent that it did. *Id.*

## II

Appellant alleges the trial court improperly gave additional pattern instructions to the jury during deliberations. Appellant claims the jury dispatched a question to the trial judge and the trial judge called the jury into the courtroom. Appellant alleges the trial judge then re-read the instructions, adding some additional pattern instructions and perhaps some State tendered instructions. Nothing in the record supports this contention.

Defense counsel Scott L. King attached his affidavit to the Motion to Correct Error. The affidavit stated he was trial counsel for Appellant in this cause, that he was within the call of the court throughout the jury's deliberations and had, in fact, been summoned to the court when the jury had a question during deliberations. The affidavit further stated that attorney King was not advised the jury had requested reinstruction and that after the verdict was returned he learned "... through discussions with the trial prosecutor, the trial judge and certain newspaper reporters that certain pattern were submitted to the jury during their deliberations." Further, the affidavit states, "Had affiant known that the trial court intended to submit 'pattern instructions' and 'State's tendered instructions' to the jury during deliberation, he would have objected due to the fact said instructions contained extraneous writings and markings and discussed irrelevant and inapplicable points of law."

Appellant does not submit the particular instructions allegedly given to the jury nor any facts to indicate the incident occurred at all except his allegation he learned about it through discussions with the trial judge, trial prosecutor and certain unidentified newspaper reporters. Nothing in the record indicates the jury was brought into the courtroom in the absence of the defense, nor that they were reinstructed and given additional instructions by the court. Ind.R.App.P. 7.2(C) provides a specific procedure to bring into the record facts that are not contained therein but which are necessary for determination of an issue on appeal. Since this was not done here, this Court has no factual basis on which to review the issue.

## III

Appellant contends the trial court erred in refusing to give her tendered instruction on the definition of self defense

and the defense of others. In reviewing an issue concerning the refusal of an instruction, this Court considers whether the tendered instruction is a correct statement of the law, whether there is evidence to support the giving of the instruction, and whether the substance of the tendered instruction is covered by other instructions given. *Smith v. State* (1984), Ind., 468 N.E.2d 512, 517, *reh. denied; Richey v. State* (1981), Ind., 426 N.E.2d 389, 395. Here, all witnesses testified that the victim was shot to death while he was asleep on a sofa at the request of Appellant and that Appellant was absent from the house at the time. Therefore, the trial court was justified in refusing to instruct on the use of reasonable force against another person to protect himself or a third person from what he reasonably believes to be the eminent use of unlawful force.

## IV

Appellant claims the trial court committed error in not supporting the statutory requirements of consecutive sentences. After giving his finding of aggravating and mitigating circumstances, the trial court enhanced the presumptive sentence of forty (40) years to a term of fifty (50) years and directed the sentence be served consecutively with any and all sentences Appellant is presently under from LaPorte County. The trial court's recitation of aggravating circumstances included a criminal record in the presentence report, the nature of the particular crime and the nature and circumstances as brought out in the evidence that the plan involved Appellant's use of other family members in carrying out a scheme of murdering the victim. The trial court found mitigating circumstances to be there was evidence the victim was cruel and abusive toward his wife and children which may have contributed to Appellant's being upset. The trial court found, however, the mitigating circumstances were far outweighed by the aggravating circumstances. These were sufficient reasons for the sentence enhancement and were supported by the evidence. *Miles v. State* (1984), Ind., 468 N.E.2d 1040, 1041–42.

■ Appellant claims the trial court did not properly support the determination that the sentence should be served consecutive to two sentences imposed in LaPorte. When consecutive sentences are imposed, the court must state specific and individualized reasons for so doing. While enhancement of the presumptive sentence and imposition of consecutive sentences are both dependent on the same statutory aggravating circumstances, sentence enhancement is a separate decision from the imposition of consecutive sentences. *Lindsey v. State* (1985), Ind., 485 N.E.2d 102, 108. We are not able to discern whether or not the court felt he was required to make the sentence consecutive to those in LaPorte under the mandatory consecutive sentence provision of Ind.Code § 35–50–1–2. Appellant claims this statute did not apply to her since the crimes for which she still faced serving the sentence in LaPorte County were committed after the instant crime for which she was being tried and sentenced. We have no way of determining from the record whether this contention is true, and thus, we agree with Appellant the trial court has not furnished us information sufficient to review this issue. Since the court has given us no reasons for imposing consecutive sentences, we remand this cause to the trial court to place in the record his reasons for imposing consecutive sentences or, in the alternative, strike that provision of his order.

## V

■ Finally, Appellant claims there was insufficient evidence to support the verdict of the jury. As a court of review, we do not judge the credibility of witnesses nor reweigh the evidence. Rather, we look only to that evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact the verdict will not be overturned. *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, 1264, *cert. denied* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. The undisputed evidence from several witnesses showed the victim

was asleep on a sofa when he was shot. The shooting resulted from several months of planning by Appellant and members of her family, including the sixteen year old son who did the actual shooting. There was sufficient evidence before the trier of fact to support the verdict.

This cause is remanded to the trial court with instructions to correct the sentencing. The trial court is in all other respects affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.