Hilma Marie WITTE, Appellant,

v.

STATE of Indiana, Appellee.

No. 46S00–8810–CR–887.

Supreme Court of Indiana.

Feb. 12, 1990.

Lawrence W. Arness, Michigan City, for appellant.

Linley E. Pearson, Atty. Gen., Mary Dreyer, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder and Conspiracy to Commit Murder. She received a sentence of sixty (60) years on the murder count and thirty (30) years on the conspiracy count, the sentences to run consecutively.

The facts are: Appellant and her two teenage sons, John and Eric Witte, had an extensive history of family problems which included an abusive father, drugs and alcohol abuse, and financial problems. In 1981, appellant conspired with her two sons to kill her husband, Paul Witte. Appellant ordered her son Eric, who was sixteen years of age at the time, to shoot Paul Witte while he slept on a sofa. (Appellant was convicted of this crime and that conviction was affirmed by this Court in the case of *Witte v. State* (1987), Ind., 516 N.E.2d 2.)

In 1982, appellant and her two sons moved in with her elderly mother-in-law Elaine Witte. Shortly thereafter, appellant discussed with her sons various ways in which they might kill the elderly Mrs. Witte. During this period of time, appellant often forged Mrs. Witte's signature on her social security checks and cashed them. She and her sons discussed poisoning, strangling, pushing the victim out of a window, and shooting her. On several occasions, appellant put poison in food and drink for Mrs. Witte. However, there was no apparent effect upon her.

On the morning of January 8, 1984, appellant awakened her youngest son John, who was fifteen years old at the time, and ordered him to kill Mrs. Witte. John complied by shooting his grandmother in the rib cage with a crossbow. During the next four months, appellant and her sons sought the aid of friends in disposing of Mrs. Witte's body. The body was cut up with knives and a chain saw. A trash compactor and a garbage disposal were used to destroy some of the parts of the body. Acid also was used to dissolve some of the bones. The remains were stored in garbage bags in a freezer. Finally, with help elicited from friends of the sons, the remains were discarded in Indiana, Illinois, and California.

■ Appellant claims the trial court erred in allowing evidence of an unrelated offense, *i.e.*, the shooting of appellant's husband, Paul Witte, in 1981. Such evidence was admitted over appellant's objection on the theory that it tended to prove a common scheme and plan and thus was an exception to the general rule that evidence of independent crimes is inadmissible. Both the rule and its exception are discussed in *Taylor v. State* (1987), Ind., 506 N.E.2d 468.

Appellant argues that the two crimes were so separated in time and *modus operandi* that the evidence of the killing of appellant's husband does not come within the exception to the general rule. However, an examination of the record in this case discloses many more similarities than differences in the two crimes. In both instances, appellant conspired with her two sons to kill a member of their family for what was perceived by her to be a bettering of her situation, both emotionally and financially. In both instances, she first attempted to poison the victims and then ordered her sons to shoot the victims. The fact, as argued by appellant, that the cases are dissimilar because she did not order the

same son to commit both crimes, and because a gun was used to kill the husband and a crossbow used to kill the mother-in-law does not constitute a sufficient difference to defeat the State's theory of common scheme and plan.

The trial court did not err in permitting evidence of the killing of appellant's former husband.

■ Appellant contends the trial court erred in permitting the testimony of Doug Menkel, claiming it was highly prejudicial, gruesome, and not relevant to the charges against appellant. Doug Menkel testified that he was a friend of appellant's son Eric and that he assisted Eric in disposing of Elaine Witte's body. He testified that he helped transport the remains in an ice chest from Indiana to California. He stated that the ice chest contained various black garbage bags. The prosecutor then asked him if he noticed anything unusual about the bags, to which Menkel replied, "Yes, it had a lot of white worms on it and some small flying black bugs."

Appellant takes the position that this testimony was wholly unnecessary and elicited by the State for the sole purpose of prejudicing the jury against her. A trial judge has wide latitude to determine the probative value of evidence in light of its prejudicial impact. Relevant evidence which logically tends to prove a material fact may be admitted although it is gruesome or cumulative in nature. *Whitehead v. State* (1987), Ind., 511 N.E.2d 284; *Chittenden v. State* (1982), Ind., 436 N.E.2d 86.

In the case at bar, Menkel's testimony was admissible to show the macabre way in which appellant and her two sons disposed of Elaine Witte's body and their indifference toward her gruesome death. The submission of this evidence was well within the trial court's discretion.

■ Appellant claims the prosecutor's inflammatory comments in the presence of the jury prejudiced her right to a fair trial. When appellant made her motion for mistrial during the testimony of Douglas Menkel, the prosecutor made the remark, "Well, we're not interested in prejudicing any more guilty persons than we are any other guilty person." Defense counsel again moved for a mistrial because of the remark of the prosecutor. However, the trial court denied the motion for a new trial but admonished the jury to disregard the prosecutor's remark. When counsel is deemed to have made improper remarks, the court is required to determine whether there was probable persuasive effect upon the jury by the misconduct. *Hill v. State* (1986), Ind., 497 N.E.2d 1061.

Ordinarily admonishment of the jury to disregard an improper remark is sufficient to remove any prejudice. *Shackelford v. State* (1986), Ind., 498 N.E.2d 382. In the case at bar, we cannot see how the admonishment of the jury would not cure any possible prejudice. In fact, it is difficult to see how prejudice would have occurred in that a prosecutor could logically be expected to believe that a person on trial for a crime was guilty. Such is the substance of his presentation to the jury. The incident was properly handled by the trial court. We see no error.

■ Appellant claims the verdict is not supported by sufficient evidence as to the cause of death as alleged in the charging information. An examination of the record in this case discloses that the evidence is overwhelming as to the cause of death. Appellant's mother and two teenage sons testified that the shooting resulted from several months of planning by appellant and other members of her family, including her youngest son, John, who did the actual shooting.

Appellant bases her argument on her claim that the testimony of the other witnesses is tainted by the fact that John had entered into a favorable agreement with the State in return for his testimony against his mother. All of this was presented to the jury for their evaluation. This Court will not invade the province of the jury in weighing the evidence. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670. The evidence in this case is sufficient to sustain the verdict of the jury.

■ Appellant contends the trial court erred in permitting the State to amend its information charging conspiracy after the commencement of trial. An information may be amended on a motion by the prosecutor at any time, if the amendment is necessary because of an immaterial defect, as long as the defendant is accorded an adequate opportunity to address the changes. *See Hegg v. State* (1987), Ind., 514 N.E.2d 1061; *Morris v. State* (1980), 273 Ind. 614, 406 N.E.2d 1187.

In the case at bar, the original information alleged that the conspiracy occurred from September of 1984 to January of 1985. When it became apparent that each date was one year off when compared with the actual commission of the crime, the State was permitted to amend the charge to show the dates to be September of 1983 to January 10, 1984. There is nothing in this record to show, nor does appellant allege, that she was misled by the original dates nor was she in any manner prevented from making her defense by reason of the amendment of the charging information. When an amendment is made, such as in the case at bar, with no showing of prejudice to the defendant, no reversible error is shown. *Henderson v. State* (1980), 273 Ind. 334, 403 N.E.2d 1088. The trial court did not err in permitting the amendment.

■ Appellant claims the trial court erred in allowing testimony concerning events which occurred beyond the date of the alleged conspiracy. Eric Witte was permitted to testify concerning conversations the family had in regard to the disposal of the victim's property after the family had journeyed to California long after the victim's death. It is proper to show events occurring after the commission of a crime if such evidence tends to show a consciousness of guilt or if there is a substantial showing that the activity was relevant to the crime charged. *See Mason v. State* (1984), Ind., 467 N.E.2d 737; *Allen v. State* (1982), Ind., 431 N.E.2d 478. In the case at bar, evidence of the disposal of the victim's property by the perpetrators of the crime was evidence to substantiate the State's theory that the victim had been killed for profit. The trial court did not err in permitting the testimony of Eric Witte.

■ Appellant contends the trial court placed her in double jeopardy by refusing to dismiss one of the two informations. Appellant takes the position that the State's theory of liability is identical in both the charge of murder and in the charge of conspiracy. To support her position, she cites *Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893 for the proposition that when the same transaction constitutes two distinct crimes, the test to be applied to determine whether there are two offenses or only one offense is whether each provision requires proof of an additional fact which the other does not. This Court has consistently taken a position that a person in fact may be charged with murder and with conspiracy to commit that murder. *See Chinn v. State* (1987), Ind., 511 N.E.2d 1000; *Smith v. State* (1984), Ind., 465 N.E.2d 1105. We find no double jeopardy in charging and convicting appellant of both offenses.

■ Appellant claims the trial court erred in imposing consecutive sentences in that the trial court considered inappropriate factors to support such enhancement. The record discloses that the trial judge gave as aggravating circumstances: 1) that defendant caused the death of a person over the age of sixty-five; 2) that the defendant stole money from the victim while she was alive and after she was killed; and 3) that the primary circumstance was that the defendant forced her youngest son to commit the actual killing and destroyed her own child. The trial court thus complied with the requirements set forth in *Whitehead, supra* in that he set out the reasons to support any aggravating circumstances. The trial court did not err in ordering the sentences to be served consecutively.

■ Appellant contends the trial court erred in failing to sequester the jury during the trial as requested by appellant. The record in this case shows that although appellant was originally charged with murder, subjecting her to the death penalty, later the State amended the information to charge her with murder with no death penalty allegation. Prior to the legislative ses-

sion of 1981, the statutory law in this State, then Ind.Code § 35–1–37–2, required that upon the request of a defendant in a death penalty case, the court was required to sequester the jury.

However, in 1981, the legislature amended the statute on sequestration and the present law provides that in all cases "the jurors may separate when court is adjourned for the day, unless the court finds that the jurors shall be sequestered in order to assure a fair trial." Ind.Code § 35–37–2–4. Even under the prior law requiring sequestration in a death penalty case, appellant would not have been entitled to sequestration as a matter of right because she did not stand trial under jeopardy of the death penalty. Therefore, no reversible error would result in a failure to sequester. *Thompson v. State* (1986), Ind., 492 N.E.2d 264.

Appellant also argues that the trial judge did not comply with Ind.Code § 35–37–2–4 in that he did not properly admonish the jury before allowing them to separate during the course of the trial. Appellant takes the position that the only admonition the trial judge gave was at the close of each day. She sets out the admonition given at that time, which is sufficient. However, appellant states that such admonition should have been given at the beginning of each day and before each recess during the day.

Appellant makes no showing that the jurors were actually exposed to trial publicity or that they violated the admonition given them at the close of each day. Under the circumstances, we see no presentation of reversible error in the manner in which the jurors were admonished. *See Schweitzer v. State* (1989), Ind., 531 N.E.2d 1386; *Harris v. State* (1985), Ind., 480 N.E.2d 932; *Corder v. State* (1984), Ind., 467 N.E.2d 409; *Drollinger v. State* (1980), 274 Ind. 5, 408 N.E.2d 1228.

The trial court is affirmed.

PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., dissents with separate opinion in which SHEPARD, C.J., concurs.

DeBRULER, Justice, dissenting.

The evidence of the killing of the husband was not admissible in this prosecution of appellant for the killing of her mother-in-law. It was irrelevant. It was not admissible on the issue of identity, as the perpetrator of the killing testified and admitted the act. It was not admissible under the common scheme or plan exception because the two killings were so separated in time, manner and space as to be separate and distinct in the legal sense. It was not admissible to prove motive in the killing of the mother-in-law. According to the State the motive provided by three witnesses was that the husband, Paul, was to be killed because he was abusive to appellant and their two sons. According to the State's witnesses, the mother-in-law was killed so that appellant and her two sons could use the old woman's life savings to solve their financial problems.

I am unable to conclude that the erroneous admission of this evidence was harmless. The jury concluded that appellant was guilty of the murder of her mother-in-law on a theory of vicarious liability, that is, because she aided and abetted her son in the crime. It also concluded that appellant was guilty of a conspiracy to murder her mother-in-law, that is, that she made an agreement with that son to carry out that same crime. It is therefore highly probable that appellant's convictions for both murder on a vicarious liability theory and conspiracy, as well as the consecutive sentences for both murder and conspiracy, are the product of the erroneous admission of evidence of appellant's prior crime. In light of this assessment of injury, and in order to grant relief for it, I would remand with instructions to grant a new trial on both charges, or in the alternative to set aside the conviction and the sentence for conspiracy.

SHEPARD, C.J., concurs.