## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Kevin S. Smith

CLERK
of the supreme court, court of appeals and tax court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Lloyd E. Sally
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James E. McGee,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent*

July 24, 2015

Court of Appeals Case No. 45A03-1411-PC-397

Appeal from the Lake Superior Court
Cause Nos. 45G02-1206-PC-8, 45G02-0907-FA-29
The Honorable Kathleen A. Sullivan, Magistrate
The Honorable Clarence D. Murray, Judge

**Bailey, Judge.**

# Case Summary

[1] James E. McGee ("McGee") appeals the denial of his petition for post-conviction relief, which challenged his convictions for Child Molesting.[1] We reverse and remand for retrial.

# Issue

[2] McGee presents the issue whether he was denied the effective assistance of trial counsel because counsel failed:

(a) to present evidence or make an offer of proof as to a prior false molestation accusation and the delusional symptoms of the complaining witness; or

(b) to object to voluminous instances of bolstering testimony and evidence of uncharged misconduct in another jurisdiction.

# Facts and Procedural History

[3] The facts underlying McGee's conviction were recited by a panel of this Court on direct appeal:

> McGee was an Illinois police officer who lived in Indiana. B.D., a minor, is the daughter of McGee's cousin, Laquita Hughes. B.D. and her family lived in Harvey, Illinois, and McGee would often stop by

---

[1] Ind. Code § 35-42-4-3.

their house. B.D. would also frequently visit McGee's house in Indiana, as McGee's daughter is approximately the same age as B.D.

B.D. testified that, on one of these visits to Indiana when she was nine years old, she was sleeping on the couch and McGee "came and set [sic] at the end of my feet and he started rubbing in between my legs." Tr. 103. She further testified that McGee put his hands "on my vagina" and "rubbed it" for about two minutes. Tr. 104-105. On another visit, when she was twelve, B.D. was riding with McGee and her younger brother in McGee's van. McGee dropped B.D.'s younger brother off at the Boys and Girls Club for a basketball tournament, and then pulled his van into a vacant lot. B.D. testified that, in the lot, McGee forced B.D. to have vaginal sex with him. B.D. recounted that on another occasion, also in McGee's van, McGee forced B.D. to "suck on him." On another visit, according to B.D., McGee made B.D. play with his penis, and he ejaculated on the steering wheel.

On July 30, 2009, the State charged McGee with two counts of child molesting as a Class A felony, and one count as a Class C felony. A jury trial was held, and, on March 19, 2010, the jury found McGee guilty on all three charges. Because of double jeopardy concerns, the trial court entered a judgment of conviction only as to Counts I and II, and sentenced McGee to forty years imprisonment for each Class A felony count, to be served concurrently.

*McGee v. State*, No. 45A04-1007-CR-413, slip op. at 1 (Ind. Ct. App. Feb. 11, 2011), *trans. denied*. On direct appeal, McGee challenged the sufficiency of the evidence to support his convictions, alleged fundamental error in jury instruction and trial court bias, and claimed that his sentence was inappropriate. His convictions and sentence were affirmed. *Id.* at 6.

[4] On June 26, 2012, McGee filed a pro-se petition for post-conviction relief. With the assistance of the Indiana Public Defender, McGee filed an amended petition for post-conviction relief alleging ineffectiveness of trial counsel. Post-conviction hearings were conducted on April 16 and 17, 2013. On October 23,

2014, the post-conviction court issued its findings of fact, conclusions, and order denying McGee post-conviction relief. This appeal ensued.

# Discussion and Decision

## *Standard of Review*

[5] The petitioner in a post-conviction proceeding bears the burden of establishing the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* On review, we will not reverse the judgment of the post-conviction court unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* A post-conviction court's findings and judgment will be reversed only upon a showing of clear error, that which leaves us with a definite and firm conviction that a mistake has been made. *Id.* In this review, findings of fact are accepted unless they are clearly erroneous and no deference is accorded to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

## *Effectiveness of Trial Counsel*

[6] Effectiveness of counsel is a mixed question of law and fact. *Strickland v. Washington*, 466 U.S. 668, 698 (1984). We evaluate Sixth Amendment claims of ineffective assistance under the two-part test announced in *Strickland. Id.* To

prevail on an ineffective assistance of counsel claim, a defendant must demonstrate both deficient performance and resulting prejudice. *Dobbins v. State*, 721 N.E.2d 867, 873 (Ind. 1999) (citing *Strickland*, 466 U.S. at 687). Deficient performance is that which falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687; *see also Douglas v. State*, 663 N.E.2d 1153, 1154 (Ind. 1996). Prejudice exists when a claimant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Cook v. State*, 675 N.E.2d 687, 692 (Ind. 1996). The two prongs of the *Strickland* test are separate and independent inquiries. *Strickland*, 466 U.S. at 697. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice … that course should be followed." *Id.*

[7] We "strongly presume" that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions. *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002). Counsel is to be afforded considerable discretion in the choice of strategy and tactics. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001). Counsel's conduct is assessed based upon the facts known at the time and not through hindsight. *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind. 1997). We do not "second-guess" strategic decisions requiring reasonable professional judgment even if the strategy in hindsight did not serve the defendant's interests. *Id.* In sum, trial strategy is not subject to attack

through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside the objective standard of reasonableness. *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind. 1998).

[8] McGee claims that his trial counsel was ineffective because he did not effectively challenge the complaining witness's credibility or preserve appropriate issues for appellate review. More specifically, although trial counsel knew that B.D.'s father had claimed she had a propensity to lie and had identified a prior molestation accusation that he considered to be false, trial counsel did not develop a corresponding defense. He did not depose B.D.'s father or provide notice of intent, pursuant to Indiana Evidence Rule 412, to present evidence of a prior false accusation. Although counsel knew that B.D.'s accusation against McGee had been made during her hospitalization at a psychiatric facility, counsel did not present evidence that B.D. had, at that time, been diagnosed as suffering from a non-specific psychosis. Nor did counsel present evidence that B.D. had insisted to her family and the hospital staff that she was pregnant despite medical evidence to the contrary, while showing another patient's ultrasound photograph as her own. Finally, counsel made no objection as B.D., her family members, a welfare caseworker, and law enforcement personnel testified at length regarding uncharged misconduct allegedly committed by McGee.

[9] Trial counsel John Cantrell ("Cantrell") testified at the post-conviction hearing, identifying the theory of defense as an attack upon B.D.'s credibility. In particular, Cantrell believed that he had held "a smoking gun" because B.D.

had reported that McGee had a mole on his penis and no such mole was visible in the State's photographic exhibits. (P.C.R. Tr. at 22.) In light of the physical evidence contradicting B.D.'s description, counsel did not pursue other evidentiary avenues.

[10] Cantrell asserted that he "would not violate motions in limine" and "could not substantiate" a prior false accusation of molestation. (P.C.R. Tr. at 30, 33.) He claimed that it had been a strategic decision to "allow all evidence of uncharged allegations from Illinois into the record" because it was preferable to "attack everything with inconsistent stories … than just one in East Chicago [Indiana]." (P.C.R. Tr. at 56, 64.) At the same time, he intended to "not allow bolstering if he could keep it out." (P.C.R. Tr. at 49.) As for investigating the substance of the testimony as to uncharged misconduct, Cantrell conceded that he had not deposed B.D.'s family members but "thought" he had spoken to B.D.'s father "in the hall." (P.C.R. Tr. at 70.)

[11] With regard to B.D.'s delusional pregnancy, Cantrell explained that the trial court had accused him of attempting to circumvent rape shield law. He appeared to be convinced that he could not challenge a ruling in limine, insisting impeachment was to be conducted "within the court's motion [sic] in

limine" and he could not "touch" its scope on cross-examination. (P.C.R. Tr. at 83.)[2]

[12] Appellate counsel Mark Bates ("Bates") testified that he had been hindered in his presentation of issues for appeal. According to Bates, evidentiary issues had not been preserved for review by timely objections or offers of proof in the trial court. Bates testified that he could discern no strategic reason for the admission of uncharged misconduct in Illinois, in light of Indiana Evidence Rule 404(b).

[13] In denying McGee post-conviction relief, the post-conviction court concluded that Cantrell had "valiantly sought" to admit the purported prior false allegation of molestation and could not be found ineffective "simply because the court ruled against his position." (App. 89.) The post-conviction court also concluded that trial counsel's failure to make an offer of proof with regard to B.D.'s medical records was not prejudicial, in that the records included no specific diagnosis of a delusional disorder. With regard to uncharged misconduct, the post-conviction court stated in relevant part:

> Cantrell testified that he believed the best defense was to question B.D. regarding the prior bad acts. Cantrell testified that B.D.'s story was unbelievable especially since B.D. claimed the molesting happened so many times, with so many people in close proximity, yet never resulted in a police investigation. Cantrell stated that it was more plausible for a jury to believe a two time event where the victim

---

[2] We observe that the trial court specifically advised counsel to the contrary. At the pre-trial hearing addressing motions in limine, the trial court clarified: "Obviously these are Motions in Limine. All these issues are going to be revisited during the trial, and I may change my ruling. These are preliminary rulings as we all know." (Tr. at 30.)

recounted specific details, rather than numerous events which basically lead to nothing. The strategy was to highlight all of the occasions to show the jury how implausible the story was, and to categorize B.D. as a liar. This Court should not and will not second guess counsel's strategy and tactics.

(App. 88.)

## *Prior Accusation of Sexual Misconduct*

[14] Prior to trial, Cantrell was provided with a statement B.D.'s father had made to Detective Edward Rodriquez of the East Chicago Police Department. The statement included references to a prior accusation by B.D.:

> The reason why we didn't make out a report [in this case] was because basically [B.D.] she's known to lie a lot, so we kind of didn't go into the motions of it, and because we used to have a handy man around the house. She accused him of touching her. She came and told that incident, she said that he touched her. He came down and she came down and he said you can call the police because I never touched your daughter. This was the handy man saying this, his name is Ollie, I don't know his last name. So [B.D.] admitted that he never touched her.

(P.C.R. Exhibit 3.) McGee now argues that Cantrell should have presented evidence of the prior accusation after requesting a hearing to demonstrate that the prior accusation was admissible as an exception to Indiana's rape shield evidentiary exclusions. In turn, the State argues that McGee has failed – even after a post-conviction hearing at which evidence was presented – to show that a demonstrably false prior accusation was made.

[15] Indiana Evidence Rule 412, the Rape Shield Rule, incorporates the basic principles of Indiana Code § 35-37-4-4 and reflects a policy that inquiry into a

victim's prior sexual activity should not become a focus of the defense. *State v. Walton*, 715 N.E.2d 824, 826 (Ind. 1999). Rule 412 is designed to preclude evidence of a complaining witness's prior sexual conduct; however, evidence of prior false accusations of rape made by a complaining witness does not constitute "prior sexual conduct" for rape shield purposes. *Id.* False accusations constitute verbal conduct, not sexual conduct. *Id.* Thus, a defendant may offer evidence of prior false accusations of rape to impeach the credibility of a witness without running afoul of the Rape Shield Rule. *Id.* at 827.

[16] Evidence of prior false accusations of rape or sexual misconduct may be admitted if (1) the complaining witness admits he or she made a prior false accusation; or (2) the prior accusation is demonstrably false. *Hall v. State*, No. 49S05-1412-CR728, slip op. at 12, n.10 (Ind. 2015). In *Hall*, the complaining witness had, according to her mother's report in a recorded telephone conversation, falsely accused a boy in another state of sexual misconduct. Nonetheless, when the mother was deposed by defense counsel, she refused to discuss the incident in detail; the trial court refused to compel her cooperation.

[17] A panel of this Court reversed Hall's conviction, concluding that the trial court abused its discretion when it denied Hall's motion to compel the complaining witness's mother to answer the deposition question regarding a prior false accusation of sexual misconduct. *Hall v. State*, 15 N.E.3d 1107, 1121 (Ind. Ct. App. 2014). On transfer, our Indiana Supreme Court ultimately concluded that the discovery ruling was harmless error. In reaching this conclusion, however,

the Court observed that the mother's response could have revealed potentially relevant information and stated that "the trial court should have granted Hall's motion to compel discovery in order to fully secure his Sixth Amendment right to confront witnesses against him. *Hall*, slip op. at 12-13.

Like the defendant in *Hall*, McGee would have been entitled to explicit exploration of the circumstances surrounding B.D.'s complaint to her parent of prior sexual misconduct, which the parent rejected as false. We would expect reasonably competent counsel to pursue this avenue. It may be that the identity of the accused could have been revealed from clues known to B.D.'s father; it may be that the accusation could have been shown to be demonstrably false. However, as the State points out, the accusation has not been disproved and thus we cannot ascertain whether McGee was prejudiced by his trial counsel's omission. B.D.'s father did not testify at the post-conviction hearing and no other evidentiary record was developed to shed light upon whether the prior accusation was indeed false. We cannot reach a conclusion of ineffectiveness of counsel based upon speculation.

## *Psychiatric Records*

In May of 2009, B.D. was admitted to a psychiatric facility, Hartgrove Hospital. The intake assessment included reports from B.D.'s guardian, Laquita Hughes, that B.D. was suicidal, a chronic runaway, reportedly pregnant, and "saying the baby was moving in her stomach." (App. 186.) B.D. was preliminarily diagnosed with an unspecified psychosis. After testing revealed that B.D. was

not pregnant, she continued to insist that she was pregnant, even displaying an ultrasound photograph apparently stolen from another patient. After B.D. was treated for major depression, Hughes expressed concern to hospital staff that B.D. was "still delusional and not ready to be discharged." (App. 274.) McGee argues that B.D. was delusional at the time she accused McGee of sexual misconduct, presenting a significant challenge to her credibility that Cantrell failed to develop. The State argues that McGee was not prejudiced because the impeachment value of the records was minimal; B.D. had not received a specific diagnosis of a delusional disorder.

[20] In a pretrial hearing, the State opposed the admission of B.D.'s psychiatric records, contending that references to pregnancy ran afoul of the Rape Shield Rule. Cantrell responded that the pregnancy references were not evidence of past sexual conduct because B.D. was not in fact pregnant; rather, she was delusional. The trial court agreed with the State, advising defense counsel: "We'll cross that bridge when we get to it, counsel. She hasn't taken the stand yet, so I don't know what you will be able to impeach her on." (Tr. at 15.) After the close of the State's case-in-chief, defense counsel again argued for admission of B.D.'s redacted psychiatric records. The trial court excluded the records and defense counsel withdrew the proffered exhibits without making an offer of proof.

[21] A history of mental problems "at the time of the incidents so that [a witness's] ability to recall the facts they were testifying about might be questionable" may be admissible for impeachment purposes. *Witte v. State*, 516 N.E.2d 2, 5 (Ind.

1987).  However, counsel will not be found ineffective for failure to impeach by means of psychiatric records that are only "marginally relevant." *Wesley v. State*, 788 N.E.2d 1247, 1252 (Ind. 2003).

[22]  Here, we conclude that the records have greater than marginal relevance.  At the time B.D. reported McGee's conduct, she was hospitalized and suffering from depression.  Her preliminary diagnosis was that of non-specific psychosis.  Although the diagnosis did not specifically reference a delusional disorder, her intake assessment indicated significant symptomology that would likely cause a reasonable factfinder to reflect upon B.D.'s perception of reality.  After a negative pregnancy test and psychiatric treatment, B.D. continued to insist that she was pregnant.  In a documented pregnancy "fixation," B.D. presented another patient's ultrasound as evidence of her own pregnancy.  (App. at 249.)

[23]  We recognize that defense counsel attempted to introduce redacted psychiatric records and encountered opposition with regard to whether admission would violate the Rape Shield Rule.  Like false accusations of sexual misconduct, false reports of pregnancy concern verbal conduct.  Disproving a claim of pregnancy does not introduce evidence of the complaining witness's past sexual behavior.  Nonetheless, defense counsel could not have compelled the trial court to reach this conclusion at trial.  However, he fell short of reasonable professional norms when he failed to make an offer of proof and preserve the issue for appellate review.  Given the severity of B.D.'s symptoms, the timing of her allegations against McGee, and the inconsistencies in her statements to medical personnel, McGee was denied the opportunity to present a significant challenge to B.D.'s

credibility. This issue could have been presented on direct appeal given an offer of proof. The omission was prejudicial.

## *Evidence of Uncharged Misconduct*

McGee was charged with molesting B.D. in the State of Indiana. At McGee's trial, B.D., each of her parents, and her sister Camesha Dowell ("Dowell") testified to uncharged events occurring in the State of Illinois. Defense counsel did not object to the testimony, purportedly preferring to defend against all accusations from any source as opposed to those alleged in the charging informations.

The admission of evidence of uncharged bad conduct is constrained by Indiana Rule of Evidence 404(b), which provides in relevant part as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

Evidence of extrinsic offenses poses the danger that the jury will convict the defendant because he is a person of bad character generally, or has a tendency to commit crimes. *Bassett v. State*, 795 N.E.2d 1050, 1053 (Ind. 2003). The rationale for the prohibition against bad act and character evidence is "predicated upon our fundamental precept that every defendant should only be required to defend against the specific charges filed." *Oldham v. State*, 779 N.E.2d 1162, 1173 (Ind. Ct. App. 2002), *trans. denied*.

[27] B.D. testified that McGee came to her Illinois home "just about every day" and would – at that home – touch her breasts and vagina. (Tr. at 102.) More specifically, B.D. testified:

> He comes to my house in Illinois to visit me, and not just to visit me, it was like every day just about every day thing, so every time he sees me, he either rub over my clothes or outside my clothes, or he put his finger in my vagina or he rubs it or something.

(Tr. at 107). B.D. also stated that McGee "was licking on my vagina … in my house in the living room [in Harvey, Illinois]." (Tr. at 113.) In corroboration, Dowell testified to seeing something "questionable" in Illinois when she came downstairs and saw B.D. "jump and move" but then both McGee and B.D. pretended to be asleep. (Tr. at 174-75.) Both Hughes and Davis testified that their daughter, Dowell, had become alarmed and called her mother at work to report her suspicions.

[28] On cross-examination of Dowell, defense counsel elicited clarifying details of the feigned sleep event and also established that McGee had access to B.D. in the kitchen, because he would ask her for drinks and then follow her. Likewise, during cross-examination of Hughes, defense counsel invited her to provide clarifying details of the events related to her in Dowell's telephone call.

[29] In sum, defense counsel elected to acquiesce when multiple witnesses revealed uncharged misconduct and then he elicited more detailed descriptions on cross-examination. Moreover, on one occasion, defense counsel initially introduced evidence of his client's uncharged bad act. During cross-examination of B.D., the following exchange took place:

> Defense Counsel: You previously testified that James had handcuffed you to your bed and felt all of your body, is that right?
>
> B.D.: Yes.

(Tr. at 132.) The prosecutor then objected that there had been no such prior testimony, and defense counsel insisted that he was conducting appropriate cross-examination based upon a deposition.[3] The trial court sustained the prosecutor's objection; no limiting instruction was requested.

[30] In light of the lengthy and detailed testimony from multiple witnesses regarding uncharged events, it is evident that defense counsel stood silently by (and occasionally assisted) as the "fundamental precept" that McGee should defend against only "the specific charges filed" was violated. *Oldham*, 779 N.E.2d at 1173. We find this to be both deficient and prejudicial.

## *Bolstering Testimony*

[31] At the post-conviction hearing, defense counsel testified that his intent was to keep out testimony that would improperly bolster B.D.'s credibility. The trial record belies his success in this regard. Voluminous corroborative hearsay evidence was admitted, without objection from the defense.

[32] Child services investigator Vashona Mack ("Mack") was invited to read to the jury her report of "just the things that [B.D.] tells you and you write down." (Tr. at 374.) The document read to the jury included B.D.'s statements to Mack

---

[3] In a side bar conference, defense counsel indicated that he was "trying to get in the fact that everybody was in the house." (Tr. at 133.)

that: McGee had "touched her" from age nine until twelve; McGee exposed his penis and B.D. "played" with it; McGee kissed B.D.'s breasts; while B.D. slept, McGee would "start feeling on her"; McGee placed his penis on B.D.'s face and tried to push her head toward it; McGee ejaculated onto a steering wheel; when B.D. was thirteen, McGee "started feeling her" in Illinois; McGee handcuffed B.D. to a bed; McGee placed his mouth on B.D.'s vagina; McGee would place B.D.'s hands on his penis; and McGee had never "penetrated" B.D. or attempted penetration. (Tr. at 375-76.)

[33] As a result of a question propounded by a juror – to which Cantrell failed to object – Hughes was asked to describe "what B.D. told her" regarding the occurrence near the Boys and Girls Club. In her testimony, B.D. had explained that McGee had pulled down her panties and "forced hisself" [sic] on her. (Tr. at 108.) Hughes' recitation of hearsay provided increased detail:

> He told her to touch him, and she touched him, and he just told her he wanted to put the head in. And she said when he first did it, it hurted (sic) and then she said he told her it's going to ease it, just give it a minute, and that's when they had sex."

(Tr. at 331.) Again, the acquiescence to bolstering testimony is both deficient performance and prejudicial.

[34] Counsel is to be afforded discretion in matters of strategy and tactics. *Timberlake*, 753 N.E.2d at 603. That said, counsel's performance must ultimately be such that the defendant has not been denied a fair trial.

Here, counsel consciously elected to have his client defend against all allegations of his misconduct toward B.D., not just those charged in the informations. Although he anticipated that evidence of uncharged misconduct in Illinois would be introduced into evidence, he did not depose or interview family members to ascertain the particulars of their anticipated testimony. He did not request a hearing to determine the admissibility of evidence the State alleged to be in violation of the Rape Shield Rule. He appeared to misapprehend his role as advocate, opining that he could not challenge rulings in limine during the trial. He failed to make an offer of proof with respect to B.D.'s psychiatric records, although aware that she had appeared delusional during her hospitalization. He did not lodge appropriate objections to hearsay testimony, no matter how damaging. He elicited testimony from the victim regarding an uncharged act of confinement by handcuffing. In light of the foregoing, we conclude that McGee has established deficient performance and resulting prejudice.

# Conclusion

McGee was denied the effective assistance of trial counsel. Accordingly, he is entitled to post-conviction relief. We remand for re-trial.

Reversed and remanded.

Riley, J., and Barnes, J., concur.