**Michael VANCE, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 49S00–9108–CR–633.

Supreme Court of Indiana.

Sept. 13, 1993.

Belle T. Choate, Choate Visher & Haith, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Geoff Davis, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of two counts of Felony Murder; Attempted Murder, a Class A felony; Robbery, a Class A felony; and Conspiracy to Commit Robbery, a Class B felony. The trial court merged the robbery offenses and entered judgment on robbery as a Class B felony. Appellant received the maximum sentences of sixty (60) years for each of the felony murder counts, fifty (50) years for the attempted murder count, and twenty (20) years for the robbery count, to be served consecutively for a total executed sentence of one hundred ninety (190) years.

The facts are: Amy Foshee worked as a waitress at Shoney's restaurant in Indianapolis. On the evening of November 15, 1989, when co-worker Eric Holmes teased her for "walking like a pigeon," she reported this harassment to her supervisor, Theresa Blosl, who in turn informed the shift manager, Charles Ervin. Ervin then summarily sent Holmes home. While riding home with co-worker Raymond Vance, appellant's brother, the angry Holmes threatened to kill Foshee.

Two or three hours later, at closing time, appellant, accompanied by Holmes, arrived at the restaurant to pick up his brother Raymond. When Raymond got off work, the three went outside; meanwhile, Foshee, Blosl and Ervin, who were riding home together, remained inside while Ervin counted the day's receipts. When Ervin opened the door to leave, appellant and Holmes walked in through the door and announced, "This is a stickup; give us your money." When Ervin began to argue with them, they acted as if they had been joking and told Foshee her car's tires were flat and she might need a ride home. All five persons then exited the restaurant.

Outside in the parking lot, it became apparent Foshee's tires indeed were flat, and Ervin decided he and the women should go back inside to use the telephone. After he opened the door, however, appellant and Holmes forced their way inside while Raymond remained outside. With appellant blocking the door, Holmes again

demanded the money from Ervin while appellant repeated, "Take them out, man, take them out." After some argument, Ervin finally handed the money bag containing $1907 to appellant, who instructed Foshee and Blosl to turn around, face the wall and shut up. When they complied, Foshee later testified, they heard scuffling noises as if someone were being tackled followed by the sound of Ervin screaming loudly. Out of the corner of her eye, Foshee then saw the men grab Blosl; next, Foshee herself was grabbed and stabbed. She fell to the floor, feigning death, yet was stabbed twice more in the back. Foshee heard one of the men mention something about "murder in the first degree" and then they left.

Foshee waited a couple of minutes, got up and saw her co-workers bleeding to death, went to a telephone, dialed 911 and summoned help. Minutes later, Sheriff's Deputy Patrick Thompkins arrived and found Ervin and Blosl dead in the foyer. Before being taken to the hospital, Foshee told Deputy Thompkins her co-worker, Eric, accompanied by appellant, had stabbed her. Using further descriptions detailed by Foshee as well as other evidence retrieved from the crime scene, police were able to reconstruct the events leading up to the robbery and to identify the perpetrators.

Appellant contends the trial court erred in denying his motions for discharge made under Ind.Crim. Rule 4(B). During the fifteen months he was held in jail awaiting trial, appellant made four requests for early trial: May 16, 1990; August 20, 1990; October 2, 1990; and December 10, 1990. Trial was set for the following dates: March 29, 1990, August 20, 1990, December 4, 1990, and February 18, 1991, when trial began. Appellant maintains the court's failure to proceed to trial on August 20, 1990, and further failure to proceed on October 2, 1990, violated his right to be brought to trial within the 70–day period mandated by Crim.R. 4(B). He goes on to point out that he reasserted his request for speedy trial on December 10, 1990, yet his trial did not begin until 72 days later.

■ As the State notes, however, Crim.R. 4(B)(1) allows a trial date to be set beyond the 70–day limit where the court makes note of its congested calendar and sets the case for trial within a reasonable time. *Young v. State* (1988), Ind., 521 N.E.2d 671. Such was the situation here when the trial court set the August 20, 1990 date 27 days after the 70th day following appellant's request, noting extreme congestion of its calendar. On that day, appellant requested the court to, in effect, postpone trial until an appellate court could rule on an interlocutory appeal or writ of mandate concerning his motion for discharge made that day. This delay thus was chargeable against him. *See Dixon v. State* (1982), Ind., 437 N.E.2d 1318.

■ This request for stay, and concurrent preparation of the interlocutory appeal by counsel, also justified the trial court's decision to strike the October 2, 1990 motion, which being *pro se* fell within the court's discretion to strike in favor of counsel's course of action. *See Kindred v. State* (1988), Ind., 521 N.E.2d 320. The December 10, 1990 request, moreover, was waived where appellant made no contemporaneous objection to the court's setting that day of the February 18, 1991 trial date; he is deemed to thereby have acquiesced. *Altmeyer v. State* (1988), Ind., 519 N.E.2d 138. Appellant was not denied his right to a speedy trial.

■ Appellant contends the trial court erred in admitting over his objection the alleged hearsay testimony of Indianapolis Police Detective Joie K. Davis, who as homicide supervisor was notified immediately of the double murder and drove to Methodist Hospital where in the emergency room he interviewed the surviving third victim, Amy Foshee. On the State's direct examination, Detective Davis testified as to what he had been told by Foshee and what he did following receipt of that information.

Appellant maintains the court's admission of these remarks was error because, not having been acknowledged by the declarant, the remarks were hearsay under

*Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482, and failed to fit within any of the hearsay exceptions adopted in our decision overruling *Patterson, Modesitt v. State* (1991), Ind., 578 N.E.2d 649. At the outset, we note that *Modesitt* itself held, and subsequent opinions have reiterated, that its displacement of the *Patterson* rule would apply prospectively only. *Saintignon v. State* (1993), Ind., 616 N.E.2d 369; *Timmons v. State* (1992), Ind., 584 N.E.2d 1108. As *Modesitt* was handed down on September 26, 1991, the instant case, tried in February and March of 1991, clearly is governed only by the *Patterson* rule along with its contemporary hearsay exceptions.

Pointing out that Foshee had no recollection at trial of her specific responses in the emergency room, appellant argues they lacked sufficient acknowledgment to be admissible under *Patterson,* citing *Lambert v. State* (1989), Ind., 534 N.E.2d 235.

We note, however, that even if erroneously admitted, Foshee's emergency-room remarks as related by Lieutenant Davis nonetheless would not constitute reversible error. The admission of hearsay is not grounds for reversal where it merely is cumulative of other evidence, *Hendricks v. State* (1990), Ind., 562 N.E.2d 725, and here the same facts were brought out during the testimony of the declarant herself, as well as during other police testimony and in statements of appellant and his brother. No prejudice, no reversal. *Id.*

Appellant contends the evidence was insufficient to support his convictions for murder and attempted murder. He notes that a conviction for murder or attempted murder requires proof of a specific criminal intent coincident in time with the criminal act. He maintains the amended information specifies proof that "while committing the crime of robbery he did stab and cut at" the victims. Conceding our standard of sufficiency review to be one regarding only that evidence most favorable to the State, he goes on to assert a total lack of any evidence that he cut or stabbed anyone, and that mere presence at the scene of a crime is not enough to establish the requisite intent.

However, while the crime of murder does require specific intent to kill, the crime of felony murder, for which appellant herein was convicted, does not, requiring instead proof only of intent to commit the underlying felony (here, robbery). *Martinez Chavez v. State* (1989), Ind., 534 N.E.2d 731. The attempted murder conviction, of course, does require proof of intent to kill; but because an accomplice is criminally responsible for all acts committed by a confederate which are a probable and natural consequence of the common plan, *Moredock v. State* (1987), Ind., 514 N.E.2d 1247, the intent to kill inferred from the knife-wielding of his accomplice may be imputed to appellant.

Appellant's own actions in participating in the robbery, to include forcing his way into the foyer, announcing the robbery, blocking the doors, ordering the women to face the wall, and holding Ervin so tightly his shoulder was dislocated while Holmes stabbed him, provide a plethora of evidence to support his intent to perpetrate the robbery. The evidence thus is sufficient to support both accessory liability, *id.,* for the attempted murder of Foshee and felony-murder liability, *Martinez Chavez, supra,* for the deaths of Ervin and Blosl.

Appellant contends the trial court erred in denying his motion to suppress evidence seized when after the crime, police without a warrant entered the apartment of Andrew Vance, appellant's cousin, discovered appellant and Holmes in the back bedroom, arrested them, and seized approximately $1800 in United States currency, some of it bloodstained. Appellant cites *Murrell v. State* (1981), Ind., 421 N.E.2d 638, for the proposition that the Fourth Amendment's proscription against unreasonable search and seizure requires the State to establish that the search fell within an exception to the warrant requirement for search of a private residence. He goes on to argue the police here had no probable cause to believe appellant had committed a crime and that their intrusion amounted to an unlawful general search for evidence of wrongdoing,

citing *Conn v. State* (1986), Ind.App., 496 N.E.2d 604.

In reviewing the trial court's ruling on the validity of a search, we consider the evidence favorable to the trial court's ruling, and any uncontradicted evidence to the contrary, to determine whether there is sufficient evidence to support the ruling. *Stallings v. State* (1987), Ind., 508 N.E.2d 550. A defendant has no constitutional right to challenge the entry and search of another person's premises. Here, the apartment in question was rented in the name of Andrew Vance's girl friend. Appellant, who lived with his brother in a van, lacked any legitimate expectation of privacy in the apartment, as did his counterpart in *Livingston v. State* (1989), 542 N.E.2d 192, where even though the defendant had his own bedroom, he slept there only sometimes and did not have free access to the house.

The discovery of the money under the mattress Holmes was lying upon, as well as that in appellant's wallet found on the floor of the closet where he was hiding, being contemporaneous with and confined to the immediate vicinity of the arrest, was reasonable as incidental to it. *See Townsend v. State* (1984), Ind., 460 N.E.2d 139. The trial court did not err in denying appellant's motion to suppress and admitting the items seized.

The trial court is affirmed.

SHEPARD, C.J., and DICKSON and KRAHULIK, JJ., concur.

DeBRULER, J., concurs with separate opinion in which DICKSON and KRAHULIK, JJ., concur.

DeBRULER, Justice, concurring.

Appellant claims that the trial court was in error in overruling his hearsay objection and permitting police officer Davis to testify to the content of a statement made by Foshee, one of the victims. The statement, made in the emergency room of the hospital within an hour after the attack, described two attackers as Eric, the salad bar man, and Mike, a black male of the same age wearing a long brown leather coat. This same victim testified at trial and identified appellant Vance and the brown coat he was wearing.

The state presents the argument in its brief that the testimony of the officer was admissible over the hearsay objection because it falls within an exception to the hearsay rule for out-of-court statements offered primarily to explain why a particular course of action was taken by the police. *Williams v. State* (1989), Ind., 544 N.E.2d 161, 162. I do not agree with this position of the state. Such an out-of-court statement supplies the reason for a particular course of action. To be admissible, the reason itself, as distinct from the course of action, must be *relevant*, that is, it must aid in the resolution of an issue at trial. Here, the reason was not relevant at the trial on guilt or innocence. Thus, this proposed justification for admission of the prior statement fails.

DICKSON and KRAHULIK, JJ., concur.