**Jason R. BUIE, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 68S00–9202–CR–00109.

Supreme Court of Indiana,

April 11, 1994.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Justice.

On August 28, 1991 a jury convicted Jason Buie of Murder,[1] Conspiracy to Commit Murder,[2] and Arson[3] in the Randolph Circuit Court.[4] On September 25, 1991, Judge Stohler sentenced Mr. Buie to sixty years on the murder count, twenty years on the conspiracy count, and twenty years on the arson count. He also ordered that the sentences be served consecutively for a total term of imprisonment of one hundred years. Mr. Buie now appeals all three convictions.

The Supreme Court of Indiana has exclusive jurisdiction of this direct appeal because the longest single sentence imposed on any count was greater than fifty years.[5]

*Facts*

The facts in the record most favorable to sustaining the convictions show that during 1989 Buie and John Sheets had been committing burglaries and fencing the proceeds with Scott McCord. McCord at some point told Buie that he wanted a woman killed and that he would pay $4000 to have it done. On the

evening of January 25, 1990, Buie and Sheets visited McCord. McCord gave Buie a twelve-gauge shot gun, after which Buie and Sheets together drove to Etta Alexander's trailer. Buie entered the trailer and shot Etta Alexander twice. Buie and Sheets returned to McCord's house, where McCord took the gun and paid Buie part of the money owed for the killing. After they had left McCord's house, Buie gave Sheets some of the money.

It was Buie's defense at trial that 1) McCord had approached him in early January of 1990 with the murder proposal but that he had refused; 2) it was Sheets whom McCord had hired to kill Etta Alexander; and 3) Buie thought that Sheets and he were going to burglarize the trailer and knew nothing about the planned murder until Sheets came into the trailer with a gun and shot Alexander. We shall recite additional facts as necessary.

On appeal, Buie raises issues concerning instructions given and refused, the admission of testimony that he argues is hearsay, and the admission of a statement he gave police after being arrested. He also raises a double jeopardy claim.

I.

This case presents several issues involving the principle that we read jury instructions not in isolation, but as a whole and in reference to one another. *Daniel v. State* (1991), Ind., 582 N.E.2d 364, 370, *reh'g denied, cert. denied,* —— U.S. ——, 113 S.Ct. 116, 121 L.Ed.2d 72 (1992); *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, 96; *Richey v. State* (1981), Ind., 426 N.E.2d 389.

*A. Murder Instructions*

■ In this case, the jury was given two distinct instructions on the elements of Murder (Instructions Nos. 6 and 11). Whether Buie's conviction for Murder need be set

---

1. IND.CODE ANN. § 35–42–1–1 (Burns Supp.1993).

2. IND.CODE ANN. § 35–41–5–2 (Burns 1985).

3. IND.CODE ANN § 35–43–1–1 (Burns 1985).

4. This was Buie's second trial. The first trial, which lasted eight days, ended in a mistrial on March 13, 1991 because of a deadlocked jury.

5. IND. CONST. art. VII, § 4; Ind.Appellate Rule 4(A)(7); *Wiseman v. State* (1988), Ind., 521 N.E.2d 942, 943.

aside depends on the way in which these instructions are read.

Those instructions read as follows:

### Instruction No. 6

To convict the defendant of the crime of Murder as charged in Count I of the information in this case, the State must prove each of the following elements:

That the defendant

1. knowingly or intentionally

2. either

(a) himself killed, or

(b) aided, induced, or caused another person to kill

3. Etta Alexander.

(R. 964.)

### Instruction No. 11

If you find that the State has proven beyond a reasonable doubt that the defendant:

1. agreed with Scott McCord and John C. Sheets to commit the crime of Murder

2. with the intent to commit the crime of Murder

3. and that either John C. Sheets or the defendant, Jason R. Buie, killed Etta Alexander in furtherance of such agreement,

you should return a verdict finding the defendant guilty of Murder, a felony, as charged in Count I of the information. (R. 969.)

We conclude that Instruction No. 11 improperly confuses the elements of Murder with the elements of Conspiracy to Commit Murder. While correctly stating the elements of Conspiracy to Commit Murder,[6] Instruction No. 11 did not correctly state the elements of Murder.[7]

In particular, Instruction No. 11 permitted the jury to find Buie guilty of Murder without finding the requisite *mens rea, i.e.,* without finding beyond a reasonable doubt that Buie knowingly or intentionally either killed the victim or aided Sheets in the killing.[8] A *mens rea* of either knowledge or intent is an essential element constituting the crime of Murder in Indiana. *Vance v. State,* 620 N.E.2d 687, 690; *Abdul–Wadood v. State* (1988), Ind., 521 N.E.2d 1299, 1300. "[T]he Due Process Clause [of the Fourteenth Amendment] protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). *See also Bellmore v. State* (1992), Ind., 602 N.E.2d 111, 126; *Smith v. State* (1984), Ind., 459 N.E.2d 355, 357. When an instruction relieves the government of its burden of proof with respect to an element of the crime charged,[9] that instruction is constitutionally defective. *Sandstrom v. Montana,* 442 U.S.

---

6. IND.CODE ANN. § 35–41–5–2 (Burns 1985) provides in relevant part:

(a) A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony.... (b) The state must allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of the agreement.

7. IND.CODE ANN § 35–42–1–1(1) (Burns Supp. 1993) provides in relevant part: "A person who: knowingly or intentionally kills another human being ... commits murder, a felony."

8. Proof of intent to commit the felony *at the time of agreement* in a conspiracy charge under IND. CODE § 35–41–5–2 cannot substitute for proof of the intent or knowledge of the defendant at the time of the killing. Proof that a defendant intended to commit murder at the time of agreement may, of course, be *evidence* of intent at the time of the killing. *See Vance v. State* (1993), Ind., 620 N.E.2d 687, 690 ("[W]hile the crime of murder does require specific intent to kill, the crime of felony murder, for which appellant herein was convicted, does not, requiring instead proof only of intent to commit the underlying felony....") (citations omitted); *Jones v. State* (1988), Ind., 523 N.E.2d 750, 752 (the intent necessary to commit murder may be inferred from the intentional use of a deadly weapon).

9. The complete removal of an element from the case is the most extreme case of the prosecution being relieved of its burden of proof on an issue to be tried.

510, 521, 99 S.Ct. 2450, 2458, 61 L.Ed.2d 39 (1979).

Instruction No. 6, however, correctly states the law under our murder statute,[10] including the *mens rea* element. Can, as the State argues, Instruction No. 6 be read in conjunction with Instruction No. 11 so as to provide the missing *mens rea* element in Instruction No. 11? We conclude that it cannot.

■ Because each of the two murder instructions stood alone as a separate instruction to the jury on the elements of murder, there were two independent ways for the jury to find Buie guilty of Murder. From the language of the two murder instructions, a juror might reasonably have understood a guilty verdict to be justified by satisfaction of either all the elements in Instruction No. 6 *or* all the elements in Instruction No. 11., *but not necessarily* all the elements contained in *both* Instructions No. 6 and No. 11. Because Instruction No. 11 lacked the required *mens rea* element, and because a reasonable juror could have found Buie guilty on the basis of Instruction No. 11 alone, a conviction based on Instruction No. 11 alone would have violated Buie's right not to be deprived of liberty without due process of law. U.S.CONST. amend. XIV, § 1. " '[W]hen a case is submitted to the jury on alternative theories[,] the unconstitutionality of any of the theories requires that the conviction be set aside.' " *Sandstrom,* 442 U.S. at 526, 99 S.Ct. at 2460 (quoting *Leary v. United States,* 395 U.S. 6, 31–32, 89 S.Ct. 1532, 1545–46, 23 L.Ed.2d 57 (1969)) (citations omitted). The theory that Buie was guilty of Murder because he was guilty of conspiracy was unconstitutional. We therefore *reverse* Buie's conviction for Murder.

*B. Other Instructions*

■ At trial, Buie objected to Instruction No. 16, which read:

Criminal intent, being a mental state of the actor, is not susceptible to direct proof. In deciding the issue of criminal intent, the jury must resort to reasonable inferences from the evidence. In deciding the ques-

tion of criminal intent, the jury should consider all of the evidence given in the case.

(R. 974.) Buie objected that this instruction was mandatory in nature. (R. 2219.) Buie urges the same argument on appeal: that the instruction was mandatory and invaded the province of the jury by unduly emphasizing certain evidence. As authority for this argument, Buie relies on *Tawney v. State* (1982), Ind., 439 N.E.2d 582. In *Tawney,* we held that it was proper for the trial court to have refused an instruction proposed by the defendant. *Id.* at 587. That instruction would have directed the jury to consider specific factors such as age, training, sex, and education in determining whether a pretrial statement had been made knowingly. *Id.* There we said, "Instructions that single out particular evidence and exhorts [sic] the jury to receive it with caution or indicate an opinion of credibility or weight invade the province of the jury and should be refused." *Id.*

Unlike the disapproved instruction in *Tawney,* Instruction No. 16 did not single out any specific kind or piece of evidence. It did quite the opposite by specifically telling the jury to consider *all* the evidence. We cannot agree either that the instruction was or would have been understood as mandatory. The use of "must" in the instruction merely recognized certain epistemological limitations inherent in every attempt to divine human intent after the fact and from without. The giving of Instruction No. 16 was not error.

■ Buie also argues on appeal that it was reversible error for the trial court to refuse his tendered Instruction No. 3. That proposed instruction read:

The informations name several Defendants. In reaching a verdict, however, you must bear in mind that guilt is individual. Your verdict as to the Defendant, Jason R. Buie, must be determined separately with respect to him, solely on the evidence, or lack of evidence, presented against him without regard to the guilt or innocence of anyone else.

(R. 954.). Although the giving of jury instructions is largely within the discretion of

---

**10.** See note 7 *supra.*

the trial court, *Nichols v. State* (1992), Ind., 591 N.E.2d 134, 139, when we review a trial court's refusal of tendered final instruction, we employ a three part analysis. We determine 1) whether the instruction correctly stated the law; 2) whether there is evidence in the record that would have made the tendered instruction relevant to the issues tried; and 3) whether other instructions actually given cover the subject matter of the tendered instruction. *Williams v. State* (1985), Ind., 481 N.E.2d 1319, 1322.

We agree with Buie that his tendered Instruction No. 3 is at least arguably a correct statement of the law. *See* INDIANA PATTERN JURY INSTRUCTIONS (CRIMINAL) # 1.23 (2d ed. 1991); *Wilson v. State* (1988), Ind.App., 525 N.E.2d 619, 624. But even if we go on to assume that there was evidence in the record which made the tendered instruction relevant to an issue tried, other instructions covered the substance of Buie's tendered Instruction No. 3.

In particular, the trial court's Instruction No. 4 read:

The trial only involves the issues formed upon said information between the State of Indiana and the defendant, Jason R. Buie.

The defendant, Jason R. Buie, has entered pleas of not guilty to the crimes charged in the information.

The burden rests upon the State of Indiana to prove to each of you, beyond a reasonable doubt, every essential element of the crimes charged in the information in this case.

The charges which have been filed are the formal method of bringing a defendant to trial. The fact that charges have been filed, or that the defendant has been arrested and brought to trial, is not to be considered by you as any evidence of guilt.

(R. 962.) This instruction, together with the trial court's correct instructions on the elements of Conspiracy to Commit Murder and Arson adequately conveyed to the jury that culpability is individual. It was not error for the trial court to refuse Buie's tendered Instruction No. 3.

## II.

■ Buie objected on hearsay grounds to a portion of testimony offered by Pam Resler, who was living with McCord at the time of the murder. Resler testified that Buie was at her house on the evening of January 24, 1990. (R. 1587.) The record shows the following exchange between the prosecutor and her:

Q: And would you describe what happened or the circumstances when you saw him on January 24, 1990.

A: He came in. Him and Scott talked for a minute. And Scott said . . .

(R. 1587.) Buie objected that what was to follow would be hearsay. (R. 1587.) The trial court overruled the objection. (R. 1587–88.) Resler continued:

A: Ok. Scott said that they was going to go out to the car and talk and they went out to the car.

(R. 1588.)

Hearsay is an out-of-court statement offered to prove the truth of the facts asserted by the statement. *Miller v. State* (1991), Ind., 575 N.E.2d 272, 275. McCord did not testify at Buie's trial; but McCord's statement was not offered to prove the truth of any fact asserted by the statement. That McCord intended to go out to the car to talk with Buie was relevant to the State's conspiracy case regardless of whether Buie and he did in fact talk. It was not error for the trial court to admit Resler's testimony about McCord's statement.

## III.

■ At trial, Buie objected to the introduction into evidence of two drawings that he had made of the crime scene as well as of a videotaped statement that he had given to the police. Before trial, Buie moved to suppress the drawings and the statement on either of two grounds: 1) he did not voluntarily and knowingly waive his *Miranda* rights; or 2) the police did not scrupulously honor his right to cut off questioning as required by *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

We stated the law governing the admissibility of confessions in *Ortiz v. State* (1976), 265 Ind. 549, 356 N.E.2d 1188:

> A statement by an accused is not admissible against him if it is not voluntarily given. A statement made under circumstances requiring the giving of *Miranda* warnings is not admissible unless such warnings are given and a knowing and intelligent waiver of the rights involved is made.
>
> In determining whether a statement was voluntarily given, we look to all the circumstances surrounding its giving to determine whether it was "induced by any violence, threats, promises, or other improper influence." The same test determines whether a waiver of the *Miranda* rights has occurred.

*Id.* at 553, 356 N.E.2d at 1191 (citations omitted); *Accord, Woods v. State* (1989), Ind., 547 N.E.2d 772, 787.

 In reviewing a motion to suppress, we do not reweigh the evidence, *Woods,* 547 N.E.2d at 787, but consider all uncontroverted evidence together with the conflicting evidence that supports the trial court's decision. *Smith v. State* (1989), Ind., 543 N.E.2d 634, 637 (per curiam). In Indiana, the burden is on the State to show beyond a reasonable doubt [11] that a defendant knowingly, intelligently, and voluntarily waived his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Smith,* 543 N.E.2d at 637.

The uncontroverted evidence and the conflicting evidence that supports the trial court show that on the evening of March 21, 1990, Buie learned from his mother that the police were looking for him. At about 11 p.m. Buie voluntarily appeared at the Delaware County Jail in Muncie, where Deputy Sheriff Michael Gibbs immediately arrested him for murder. Gibbs advised Buie of his *Miranda* rights, reading from a card. He did not have Buie sign a waiver of those rights. According to Gibbs, Buie did not ask for a lawyer, nor did he refuse to answer questions. Gibbs said at the suppression hearing that Buie told him he wanted to get things straightened out. (R. 409–18). Gibbs booked Buie into the jail. At about 11:30 p.m. Gibbs took Buie to a room in the detectives trailer behind the jail where there were approximately five police officers waiting. Deputy Sheriff Robert Pyle, at the instruction of Delaware County Sheriff Captain Jerry Cook, again read Buie his *Miranda* rights from a card. He also had Buie read the card himself. At 11:50 p.m. Buie signed two forms: one indicating that he had read and understood his *Miranda* rights; and another waiving those rights.

At the suppression hearing, five officers testified that Buie never asked for a lawyer during the two and a half hours that he was in the detectives trailer. They also testified that he did not refuse to answer questions. To repeated questions about the murder of a woman in Randolph County, Buie insisted that he had nothing to say because he did not know anything about it. He claimed that he did not even know where Randolph County was.

Randolph County Sheriff Captain Drew Wright arrived at the detectives trailer at about midnight. He had just returned from New Castle, where John Sheets had given a statement implicating Buie in the murder of Etta Alexander. At the suppression hearing, Wright also testified that Buie did not ask for a lawyer or refuse to answer questions while in the trailer. Wright recalled that he might have mentioned that Sheets had implicated Buie and that he might have told Buie that it would be to his advantage to tell his side of the story. Buie again said that he did not know anything about the murder or even where Randolph County was. Wright asked Buie if he would take a "stress test" in New Castle to determine whether he was telling the truth. Buie said that he would.

At about 2:00 a.m. on March 22nd, Wright and Major Jay Harris drove Buie from Muncie to the Randolph County jail. They booked him into the jail at about 3:00 a.m.

---

**11.** In federal prosecutions, the government need only prove by a preponderance of the evidence that a defendant knowingly and voluntarily waived his *Miranda* rights. *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985); *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

At half past noon on the twenty-second, Wright talked to Buie at the Randolph County jail. Wright testified at the suppression hearing that he read Buie a *Miranda* warning from a card. Wright asked Buie if he wanted to make a statement. Buie said, "No." Wright then asked Buie if he still wanted to take the stress test. Buie said, "Yes."

At about 2:00 p.m. on the twenty-second, Wright and Harris drove Buie to New Castle, where Henry County Sheriff Sergeant Kim Cronk was to administer the "stress test." During the drive to New Castle, Buie asked if it would help him if he gave them some information about some burglaries. Harris immediately stopped Buie and read him a *Miranda* warning. Neither the police nor Buie said anything more.

At this point the police had provided Buie with *Miranda* warnings no less than four times: three times with respect to the murder; once when Buie offered information about past burglaries.

Before beginning the "stress test," Sergeant Cronk read to Buie an Advice of Rights form that included the usual points in a *Miranda* warning. Buie said that he understood the form and signed a Waiver of Rights form at 2:42 p.m. Cronk also read to Buie a Henry County Sheriff's Department Psychological Stress Evaluator Release form. Buie signed that form and agreed to take the test at 2:57 p.m. Cronk testified that Buie did not ask to speak with a lawyer or indicate that he did not wish to make a statement.

Cronk ran the "stress test" on Buie twice before 5:00 p.m. Sometime between 4:30 p.m. and 5:00 p.m., Buie made the first statement admitting knowledge of facts surrounding the murder.

After a break of an hour, during which some food was brought in for Buie, Cronk began interrogating Buie again at about 6:00 p.m. Before running the "stress test" again, Cronk had Buie draw a diagram of the crime scene. Cronk then ran the "stress test" three more times, finishing at about 7:15 p.m. Cronk then made arrangements to take a video-taped statement.

At 8:03 p.m. Cronk began the video-taped statement with Officers Wright and Harris in the room. Cronk again asked Buie if he understood his rights and asked also if Buie was aware that he was being video-taped. Buie said that he was aware of his rights and that he gave his permission to take the video-taped statement. The video-taped statement under questioning lasted approximately forty minutes.

By the end of the interrogation process, Buie had been given *Miranda* warnings no less than six times. Twice he had signed waiver forms.

The record also shows that Buie was arrested without a warrant on March 21, 1990. He was not provided an initial hearing until March 29, 1990.

### A. Voluntariness

Buie's claims that his drawings and statement were not given voluntarily because they were the products of promises of leniency, mental coercion, not allowing him to make a phone call, and delay in taking him to trial for his initial hearing. Although Buie testified that he was promised his release if he agreed to take the "stress test," none of the officers testified that they offered Buie anything in exchange for his taking the test. The evidence is thus at most conflicting. As Buie argues, it is hard to understand why anyone claiming their innocence would agree to take such a test without some promise in return. But while we may view with suspicion the three hour interrogation on the evening of March 21 and into the morning of March 22, when the evidence is merely conflicting, we will not disturb the finding of the trial court. *Smith*, 543 N.E.2d at 637.

The general claim of mental coercion is unsupported by the record. The record does not reflect that Buie was threatened, deprived of sleep or food, or otherwise mistreated. Buie appeared voluntarily at the police station at about 11:00 p.m. At about 2:00 a.m. the first round of interrogation ended. Investigators did not disturb him again until well past noon the next day; and the subsequent interrogation did not begin until 3:00 p.m. There was a break in the afternoon session at 5:00 p.m., during which

food and drink were brought to Buie. The third session, including the taking of the video-taped statement lasted approximately two and a half hours. Because there is no evidence that Buie was physically abused or subjected to prolonged interrogation sessions, there is no reason on this basis to disturb the trial court's finding that Buie's waiver of his rights under *Miranda* was knowingly, intelligently, and voluntarily made. *Colorado v. Spring,* 479 U.S. 564, 573–74, 107 S.Ct. 851, 856–57, 93 L.Ed.2d 954 (1987); *Colorado v. Connelly,* 479 U.S. 157, 169–170, 107 S.Ct. 515, 522–23, 93 L.Ed.2d 473 (1986); *Woods,* 547 N.E.2d at 787.

Buie claims that he repeatedly requested an opportunity to make a phone call during the first interrogation session. The police officers involved all testified that he did not. Again, the record is conflicting, and we will not disturb the trial court's finding on this basis.

INDIANA CODE ANN. § 35–33–7–1 (Burns 1985) provides that "A person arrested without a warrant for a crime shall be taken promptly before a judicial officer...." At an initial hearing the court is required to inform an accused of the nature of the charges against him, the amount and conditions of bail, his right to a speedy trial, his privilege against self-incrimination, and his right to retained or appointed counsel. *Anthony v. State* (1989), Ind., 540 N.E.2d 602, 604. The purpose of the statute is to avoid unnecessary delay during which investigating officers might solicit confessions or attempt to procure other evidence. *Saunders v. State* (1990), Ind.App., 562 N.E.2d 729, 743, *vacated on other grounds,* (1992), Ind., 584 N.E.2d 1087.

■■■■ A violation of § 35–33–7–1 is not an automatic ground to suppress a statement obtained in the time between a defendant's arrest and his initial hearing. *Frith v. State* (1975), 263 Ind. 100, 110, 325 N.E.2d 186, 192;[12] *Corvelli v. State* (1991), Ind.App., 579 N.E.2d 466, 474. Delay in bringing a defendant before a judge for an initial hearing is, however, a factor in determining the volun-

tariness of a statement. *Id.* The normal remedy for the violation of a statute such as § 35–33–7–1 is suppression of the evidence obtained during the unreasonable delay, *Saunders,* 562 N.E.2d at 743; but the burden is on the defendant to show that the delay was both unreasonable and prejudicial. *Anthony,* 540 N.E.2d at 605.

Although it is true that an entire week passed between the time Buie was arrested and the time he was brought before a judge for an initial hearing, Buie gave his drawings and statement to the police within twenty-four hours of being taken into custody. Buie does not claim that the police threatened to delay his initial hearing in order to obtain his cooperation, nor does he show any other connection between the delay and the giving of his statement. So while in some cases unreasonable delay between arrest and an initial hearing may be a factor in analyzing whether a statement was given voluntarily, it was not a factor here and we need not consider it. *Saunders,* 562 N.E.2d at 743 (relying on *United States v. Studley,* 783 F.2d 934 (9th Cir.1986)).

We therefore affirm the trial court's finding that Buie's waiver of his *Miranda* rights was voluntary.

### B. *Michigan v. Mosley*

■■■ Buie asserts that his right to cut off questioning was not scrupulously honored as required by *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). In *Mosley,* after advising Mosley of his *Miranda* rights, a robbery detective questioned him about some robberies. When Mosley said he did not want to answer any more questions about the robberies, the officer ceased questioning him. About two hours later, Mosley was brought to an interview with a homicide detective, who read him his *Miranda* rights a second time. Mosley said he understood his rights and signed a waiver form. The homicide detective proceeded to ask Mosley questions about a murder. Without asking for a lawyer or indicating that he

---

**12.** We decided *Frith* under IND.CODE 1971, § 35–4–1–1, the predecessor statute to the current

§ 35–33–7–1.

did not wish to answer any more questions, Mosley proceeded to implicate himself in the murder under discussion.

The United States Supreme Court concluded that the facts in *Mosley* did not present a case

> where the police failed to honor a decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind. . . . [T]he police here immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been the subject of the earlier interrogation.[13]

423 U.S. at 105–106, 96 S.Ct. at 327. In this case, Buie never requested that questioning cease. Indeed, during the first interrogation session following his arrest, he said he did not know anything about the murder and consented to undergo the "stress test."

It is true that at half past noon on the twenty-second, after Officer Wright had read him his rights again and asked if he wanted to make "any statement concerning why he was there," (R. 462), Buie unequivocally said "No." But in light of the consent to the "stress test" that Buie had given Officer Wright personally the evening before, we think it cannot fairly be said that Officer Wright was engaging in repeated efforts to wear down Buie's resistance and get him to change his mind. Officer Wright was, rather, merely attempting to discover if Buie had changed his mind since the evening before about taking the "stress test."

Indeed, the circumstances of this case show that the police did in fact scrupulously honor Buie's right to cut off questioning and to control the circumstances and timing of any questioning that was to take place. Buie was given *Miranda* warnings at every turn. Twice he signed waiver forms. When Officer Wright asked Buie if he wanted to make a statement and Buie said "No," Officer Wright made no further attempt to obtain a statement. During the ride to New Castle, when Buie initially offered information about burglaries and then remained silent in response to a *Miranda* warning, the police did not press him for more information about the burglaries. Buie was warned both before taking the "stress test" and before giving the video-taped statement. Before the "stress test" he signed a waiver form. Lastly, there were significant periods of time between interrogation sessions, with an hour's pause during the afternoon "stress tests."

The trial court properly admitted Buie's drawings and video-taped statement.

### IV.

■ Finally, Buie claims on appeal that because the State charged the intentional killing of Etta Alexander as the overt act in support of the conspiracy charge, his convictions and sentences for both Murder and Conspiracy to Commit Murder violated the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article I, § 14 of the Indiana Constitution. Because we are reversing Buie's murder conviction, we address the issue as whether the State may retry Buie for Murder.

The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Fifth Amendment to the federal constitution was made applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

On the same day that it decided *Benton*, the United States Supreme Court interpreted the Double Jeopardy Clause to protect people from three things: a second prosecution for the same offense after an acquittal; a second prosecution for the same offense after a conviction; and multiple punishments

---

13. The restriction of the second interrogation to a subject other than the robberies, which had been the subject of the first interrogation, is important in *Mosley* because Mosley specifically refused to answer any more questions about the robberies. 423 U.S. at 105 n. 11, 96 S.Ct. at 327 n. 11.

for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The question we need to ask in view of this case's particular posture is whether a retrial of Buie would be a second prosecution for the same offense after a conviction.

We must first analyze whether Murder and Conspiracy to Commit Murder are the "same offence." In analyzing whether two offenses are the same, we first apply the test announced in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932): "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Id.* at 304, 52 S.Ct. at 182; *Derado v. State* (1993), Ind., 622 N.E.2d 181, 183; *Elmore v. State* (1978), 269 Ind. 532, 534, 382 N.E.2d 893, 895.

Our cases have said repeatedly that it does not violate the Double Jeopardy Clause of the Fifth Amendment or Article I, § 14 of the Indiana Constitution to charge and convict a person for both a substantive offense and a conspiracy to commit the substantive offense. *E.g., Derado v. State*, 622 N.E.2d at 184; *Witte v. State* (1990), Ind., 550 N.E.2d 68, 72; *Hammers v. State* (1987), Ind., 502 N.E.2d 1339, 1343; *Taylor v. State* (1956), 235 Ind. 126, 131 N.E.2d 297, 298.[14] This is no less true for Murder and Conspiracy to Commit Murder than for any other substantive offense. *Witte*, 550 N.E.2d at 72.

A comparison of Indiana's murder statute with its conspiracy statute shows why, on their face, the two offenses are not the same under *Blockburger*. The offense of Murder requires proof that the defendant either knowingly or intentionally killed a human being;[15] the offense of Conspiracy requires proof of an agreement to commit a felony as well as proof of some overt act in furtherance

of the agreement.[16] Murder, then, requires proof of a killing, but not of an agreement. *Chinn v. State* (1987), Ind., 511 N.E.2d 1000, 1003. Conspiracy, however, requires proof of an agreement, but not necessarily of a killing. *Smith v. State* (1984), Ind., 465 N.E.2d 1105, 1124.

■ Although Murder and Conspiracy to Commit Murder as defined by statute are not the same offense, double jeopardy analysis does not end with an evaluation of the statutory provisions alone. We must look at the manner in which the offenses were actually charged. *Derado*, 622 N.E.2d at 183; *Tawney*, 439 N.E.2d at 588. If from the manner in which the offenses were actually charged it appears that one offense becomes a "species of lesser-included offense," then double jeopardy principles bar conviction for both offenses. *United States v. Dixon*, — U.S. —, —, 113 S.Ct. 2849, 2857, 125 L.Ed.2d 556 (1993) (prosecution for criminal contempt based on violation of a criminal law incorporated into a court order barred subsequent prosecution for the criminal offense); *Illinois v. Vitale*, 447 U.S. 410, 420, 100 S.Ct. 2260, 2267, 65 L.Ed.2d 228 (1980) (subsequent prosecution for involuntary manslaughter after conviction for failing to reduce speed barred by Double Jeopardy Clause if "a failure to slow" was a necessary element of manslaughter by automobile under state law); *Harris v. Oklahoma*, 433 U.S. 682, 682, 97 S.Ct. 2912, 2912, 53 L.Ed.2d 1054 (1977) (prosecution for robbery barred by Double Jeopardy Clause when the defendant had already been convicted of felony murder based on the same robbery); *Derado*, 622 N.E.2d at 184 (convictions for both dealing in cocaine and conspiracy to deal in narcotics barred by Double Jeopardy Clause where "[t]he State was required to prove no facts to obtain the conviction for dealing in cocaine in addition to those facts that it was required to

---

**14.** *See also United States v. Felix*, — U.S. —, —, 112 S.Ct. 1377, 1384, 118 L.Ed.2d 25 (1992) (" '[T]he same overt acts charged in a conspiracy count may also be charged and proved and proved as substantive offenses, for the agreement to do the act is distinct from the act itself.' " (Quoting *United States v. Bayer*, 331

U.S. 532, 542, 67 S.Ct. 1394, 1399, 91 L.Ed. 1654 (1947) (citations omitted)).

**15.** See note 7 *supra*.

**16.** See note 6 *supra*.

prove to obtain the conviction for conspiracy.").[17]

In double jeopardy analysis, crimes cannot be abstracted from their separate *elements*. *Dixon*, —— U.S. at ——, 113 S.Ct. at 2857; *Vitale*, 447 U.S. at 420–21, 100 S.Ct. at 2267. Therefore, where the overt act element of a conspiracy charge is the underlying offense, convictions and sentences for both would constitute multiple punishments for the same offense, which both the federal and Indiana constitutions forbid. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *Elmore*, 269 Ind. at 535, 382 N.E.2d at 895.[18] Similarly, where the overt act element of a conspiracy charge is the underlying offense, and where the State has obtained a conviction for Conspiracy based on the commission of the underlying offense as the overt act, the State may not subsequently pursue a prosecution for the underlying offense. That would constitute a second prosecution for the same offense after a conviction.

In Count II of the information alleging conspiracy to commit murder, the State charged that Buie, Sheets, and McCord agreed to kill Alexander, and that "Jason R. Buie and John Sheets did perform an overt act, to wit: knowingly and intentionally kill Etta Alexander." (R. 31.) It is apparent that to obtain Buie's conviction for Conspiracy to Commit Murder, the State proved that Buie intentionally killed Etta Alexander.

This case presents a situation analogous to that in *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912. *Harris* involved a conviction for felony murder on the basis of a killing that occurred during a robbery. Once Oklahoma had used the robbery to obtain the felony murder conviction, the Double Jeopardy Clause barred a subsequent prosecution of Harris for the robbery. Here, the State proved an agreement and a killing to obtain a conspiracy conviction. It may not now, therefore, prosecute Buie again for the same killing.

### Conclusion

We reverse Buie's conviction for Murder. We affirm the convictions for Conspiracy to Commit Murder and Arson.

SHEPARD, C.J., and DeBRULER and DICKSON, JJ., concur.

GIVAN, J., dissents with opinion.

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion in their holding that the giving of Instruction Number 11 is reversible error. The basis for appellant's objection at trial was that the instruction was misleading and confusing in that it intermingled the elements of conspiracy to commit murder with the elements necessary to prove the offense of murder.

Assuming that the instruction was erroneous, the instructions, when taken as a whole, properly instruct the jury. We have held that the manner of instructing a jury lies within the sound discretion of the trial court. *Concepcion v. State* (1991), Ind., 567 N.E.2d

---

17. *See also Wethington v. State* (1990), Ind., 560 N.E.2d 496, 506 (separate sentences for robbery and criminal confinement barred by double jeopardy when the force used to effectuate taking of robbery is coextensive with force used to confine); *Hall v. State* (1986), Ind., 493 N.E.2d 433, 436 (conviction for both reckless homicide and child neglect barred by double jeopardy where to obtain convictions on either count the State had only to prove the same pattern of neglect); *Tawney* (conviction for both robbery and battery barred by double jeopardy where stabbing constituted both the battery and the element of force used to take the money in the robbery charge).

18. Because in Indiana the overt act requirement is an *element* of conspiracy, the flat statement in *Felix v. United States*, —— U.S. ——, ——, 112 S.Ct. 1377, 1384, 118 L.Ed.2d 25 (1992) that a substantive crime and a conspiracy to commit that crime are not the same offence does not control this case. In the federal drug conspiracy context in which *Felix* was decided, overt acts are merely *evidence* of conspiracy. *Felix*, —— U.S. at ——, 112 S.Ct. at 1386 (Stevens, J., concurring in part and concurring in result). *Cf. Boles v. State* (1992), Ind.App., 595 N.E.2d 272, 275 (Sullivan, J., concurring) ("[T]he overt acts involved in a conspiracy charge in Indiana are not merely a matter of evidence. The overt act or acts are an essential element of the crime itself. Therefore, double jeopardy implications are present when the only overt act alleged in the conspiracy charge has been the subject of a previous conviction or acquittal.").

784. Jury instructions are to be read together as a whole and not as single units. *Hurt v. State* (1991), Ind., 570 N.E.2d 16.

The trial court gave detailed and separate instructions regarding the elements of murder and conspiracy. The trial court also instructed the jury to consider the instructions as a whole. Under the circumstances, it is unrealistic to believe the jury was misled by the language of Instruction 11.

I would affirm the trial court in all respects.