**Eddie GRIFFIN, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

No. 18A02–9609–CR–602.

Court of Appeals of Indiana.

Feb. 10, 1998.

---

Geoffrey A. Rivers, Muncie, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Preston W. Black, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

KIRSCH, Judge.

Eddie Griffin was tried for felony murder, robbery, and conspiracy to commit robbery in connection with the robbery and killing of David Turner. In Griffin's first trial, the jury acquitted him of felony murder and was unable to reach a verdict on the robbery and conspiracy charges. Griffin was retried and convicted by a jury of robbery,[1] a Class A felony, and conspiracy to commit robbery,[2] a Class A felony. He appeals, raising the following issues for our review:

I.  Whether principles of double jeopardy and collateral estoppel preclude Griffin's retrial on robbery and conspiracy to commit robbery.

II.  Whether the trial court erred by admitting a transcript of Griffin's co-

---

1. *See* IC 35–42–5–1.

2. *See* IC 35–41–5–2 (conspiracy); IC 35–42–5–1 (robbery).

conspirator's testimony from the first trial.

III. Whether the trial court erred by excluding evidence that Griffin's co-conspirator made statements, during the same time period as the conspiracy to rob Turner, that he desired to kill somebody.

IV. Whether the trial court erred by excluding psychological evidence regarding Griffin's ability to form the requisite intent to commit the crimes,

We affirm.

## FACTS AND PROCEDURAL HISTORY

In June of 1993, a long-time friend of Griffin's, Joe Hartman, was awaiting sentencing on criminal charges to which he had pled guilty in Henry County. Hartman wanted to avoid sentencing by leaving town, but he needed money to do so. Griffin, Hartman, and two of their friends, Scott Ransom and Shane Craig, discussed ways in which they could obtain money so that they could all leave town together. The four men agreed that they would set up a drug deal with the victim, David Turner, and rob him of a large quantity of marijuana.

On June 15, 1993, Hartman paged Turner and arranged to meet him at a Muncie hotel for the purpose of purchasing ten pounds of marijuana. Hartman met Turner and brought him and the ten pounds of marijuana to a residence where Griffin, Craig, and Ransom were waiting. The four men attacked Turner and robbed him of the marijuana. Turner died in the incident.

All four men were charged with felony murder, robbery, and conspiracy to commit robbery. Craig and Ransom pled guilty to robbery. Hartman and Griffin went to trial. Hartman was convicted as charged. Griffin was acquitted of felony murder, and a mistrial was declared on the robbery and conspiracy charges because the jury was unable to reach a verdict. Griffin was retried on those charges and convicted. Griffin appeals from those convictions.

## DISCUSSION AND DECISION

### I. Double Jeopardy/Collateral Estoppel

Griffin first contends that under principles of double jeopardy, his acquittal for felony murder precluded his subsequent reprosecution for robbery and conspiracy. He argues that the State was not required to prove anything different or additional to gain convictions for robbery or conspiracy in the second trial than it was required to prove for felony murder in the first trial.

The recent case of *Games v. State*, 684 N.E.2d 466 (Ind.1997), *reh'g granted*, *opinion modified on other grounds*, 690 N.E.2d 211, changed the law on double jeopardy in Indiana. The supreme court held that the determination of whether the defendant's conduct constitutes more than one offense is to be made by examining only the statutory elements comprising the offenses without regard to the manner in which the offenses were charged, the jury was instructed, or the nature of the underlying proof necessary to prove the elements, as in pre-*Games* cases. *Id.* at 477.[3] The double jeop-

3. *Games* was a case involving multiple punishments whereas the present case involves a subsequent prosecution. The purpose of *Games* was to bring Indiana in line with federal jurisprudence interpreting the double jeopardy protections contained in the federal constitution. *Id.* at 474. In identifying such federal jurisprudence, the court relied largely upon *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), as providing the proper analysis for determining federal double jeopardy claims. In *Dixon*, the Court noted that the federal Double Jeopardy Clause "serves the function of preventing both successive punishment and successive prosecution[.]" *Id.* at 704, 113 S.Ct. at 2860. The Court also overruled *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), which adopted a "same conduct" rule for evaluating federal double jeopardy claims in subsequent prosecution cases, a rule that is different than the "same elements" test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In overruling *Grady*, the Court stated that there is no authority, except *Grady*, for the proposition that the federal Double Jeopardy Clause has different meanings in the successive punishment and successive prosecution contexts. *Dixon*, 509 U.S. at 704, 113 S.Ct. at 2860. Given these statements in *Dixon*, and given our supreme court's express declaration that *Dixon* is the controlling law in double jeopardy cases, the analy-

ardy determination is made according to the *Blockburger* test:

"[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not."

*Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182.

■ Here, as in *Games*, the question is whether murder and Class A robbery constitute the same offense for double jeopardy purposes. In *Games*, our supreme court held that convictions for both Class A robbery and murder did not violate double jeopardy principles because:

"[E]ach statute requires proof of an additional fact which the other does not: Murder requires a knowing or intentional *killing*; Class A Robbery requires that *property* be taken, resulting in some type of bodily injury to a person other than the defendant."

*Games*, 684 N.E.2d at 477.[4] Under this analysis, Griffin's retrial for robbery following his acquittal for felony murder does not offend double jeopardy principles.

■ Similarly, murder and conspiracy to commit robbery are not the same offense for double jeopardy purposes. Under IC 35–41–5–2, a conspiracy exists upon proof that a person, with the intent to commit a felony, agrees with another to commit that felony and that an overt act was taken in furtherance of that agreement. Thus, conspiracy requires proof of an agreement, an element not required by the murder statute. As noted above, murder requires proof of a killing, an element not required by the conspiracy statute. Thus, murder and conspiracy to commit robbery each contain an element that the other does not and are not the same offense for double jeopardy purposes.

sis set forth in *Games* also applies in the subsequent prosecution context.

4. *Games* analyzed the robbery statute in effect in 1982 which made the offense a Class A felony if it resulted in either bodily injury or serious bodily injury to a person other than a defendant. The

Griffin also claims, for the first time on appeal, that the State was collaterally estopped from retrying the robbery and conspiracy charges. Griffin's motion to dismiss and related trial objections were based only on double jeopardy grounds. No collateral estoppel claim was submitted to the trial court. Absent the trial court's ruling on the issue, we will not consider it on appeal. *See Dixon*, 509 U.S. at 712, 113 S.Ct. at 2864 n. 17 (while noting possible implications of collateral estoppel issue, Supreme Court did not decide issue because neither lower court ruled on it).

### Issue II—Admissibility of Co-Conspirator's Prior Trial Testimony

Griffin next contends that the trial court erred in admitting the testimony of his co-conspirator, Shane Craig. The testimony was admitted in the form of a transcript of Craig's testimony from the first trial because Craig refused to testify in the second trial despite the court's order that he do so. The trial court declared Craig unavailable under Ind.Evidence Rule 804(a)(2) and admitted the transcript which was read to the jury. *Record* at 2138.

The evidence was admissible under Ind.Evidence Rule 804(b)(1) which provides:

"**(b) Hearsay Exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness.

(1) *Former Testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

statute was amended in 1984 to provide that the offense is a Class B felony if it results in bodily injury. The offense remained a Class A felony if it resulted in serious bodily injury. The 1984 amendment does not affect the double jeopardy analysis.

■ Admission of former testimony of an unavailable witness is a matter of trial court discretion. *Lowery v. State*, 478 N.E.2d 1214, 1223 (Ind.1985), *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 900 (1986). A witness' refusal to testify renders him unavailable for purposes of using his prior testimony. *Kellems v. State*, 651 N.E.2d 326, 328 (Ind.Ct.App.1995).

■ Here, Craig was unavailable by reason of having refused to testify. Griffin had a full opportunity at the first trial to cross examine Craig and, in fact, thoroughly performed such cross examination. Griffin's motive in the first trial was similar, if not identical, to his motive in the second trial: present the best possible defense to the criminal charges against him. The trial court properly admitted the transcript of Craig's testimony from the first trial.[5]

### Issue III—Exclusion of Co–Conspirator's Extrinsic Offenses

The trial court excluded evidence concerning an apartment fire that occurred the night before Turner's murder. Griffin sought to elicit testimony from witnesses that heard Shane Craig state that he started the apartment fire, knowing that there were people inside, and that he desired to kill somebody. The trial court excluded the testimony on hearsay and relevance grounds, *Record* at 2703–06, and Griffin made an offer to prove. *Record* at 2780.

■ Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind.Evidence Rule 401. Evidence that Craig committed other acts does not have any tendency to make it more probable or less probable that Griffin committed the crimes with which he was charged. Craig's desire to kill somebody was of no relevance in Griffin's second trial because the responsibility for the victim's death was not at issue. The trial court properly excluded the evidence on relevance grounds.

### IV. Exclusion of Evidence Regarding Ability to Form Intent

The trial court also excluded evidence from Griffin's psychologists concerning Griffin's mental and physical state and his consequent inability to form an agreement. The trial court excluded the evidence in reliance on Ind.Evidence Rule 704(b) which provides: "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." *See Record* at 1963. The witness is restricted to "observable fact, leaving any appropriate conclusions as to intent, belief, or feelings to the trier of fact." *Weaver v. State*, 643 N.E.2d 342, 345 (Ind.1994) (although case was decided prior to the adoption of Indiana Rules of Evidence, court explicitly stated that the Rules "do not require a different result.").

■ One of the psychological reports the trial court excluded states that Griffin has "problems functioning in everyday life;" has "poor judgment and insight;" is "easily agitated and impulsive;" and has "problems understanding what is being said to him." *Record* at 372–73. Another report contains the psychologist's statement that "I do not know the legal meaning of 'conspiracy', but if it implies planning and thought and/or careful activity I would think that this would be beyond him." *Record* at 376. Both reports contain impermissible conclusions regarding Griffin's intent. It was for the trier of fact to make such determinations. The evidence was properly excluded.

Affirmed.

FRIEDLANDER, J., concurs.

SULLIVAN, J., concurs in part and dissents in part.

SULLIVAN, Judge, concurring in part and dissenting in part.

I fully concur with respect to Parts II, III and IV. As to Part I, I dissent.

5. Given the testimony's admissibility under Evid.R. 804(b)(1), we need not reach Griffin's contention that the State was required to provide independent evidence of the existence of a conspiracy as a prerequisite to admission of the testimony under Ind.Evidence Rule 801(d)(2)(E).

Although the majority highlights the fact that robbery as a Class A felony and murder do not constitute the same offense for double jeopardy purposes, it does not pose the truly pertinent question: Are robbery as a Class A felony and *felony* murder the same offense for double jeopardy purposes? Our Supreme Court has held that, "when a felony-murder results from a killing in the commission of a robbery, the robbery is the lesser included offense of the felony-murder." *Eddy v. State* (1986) Ind., 496 N.E.2d 24, 29. *See also Collier v. State* (1984) Ind., 470 N.E.2d 1340.

As that court pointed out in *Kennedy v. State* (1996) Ind., 674 N.E.2d 966, 967, "the conviction for murder while in the commission of a felony could not occur without proof of the accompanying felony." The majority here opines that murder requires a knowing or intentional killing while Class A robbery requires that property be taken, resulting in serious bodily injury or death and that therefore each contains an element not present in the other.

The majority relies upon *Games, supra,* 684 N.E.2d at 466, for its conclusion that the retrial here does not offend double jeopardy. In *Games,* our Supreme Court determined that one should look only to the statutory elements of the offenses in order to determine whether a double jeopardy prohibition exists. *Id.* at 477. The dispositive question under *Games* is "whether each provision requires proof of an additional fact that the other does not." *Blockburger v. United States* (1932) 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306.

*Games* has not rendered the lesser included offense doctrine impotent in Indiana. As the majority concludes, Class A robbery requires: 1) that property is taken, and 2) that either bodily injury or death results. Felony murder requires:1) the underlying felony or an attempt, and 2) death. The first element of felony murder requires the proof of the felony—thus all the requirements of that felony. The second requirement of felony murder is death. Although felony murder re-

quires proof of an element not inherent in Class A robbery, Class A robbery does not require the proof of any element that is not required under felony murder.

Stated somewhat differently, in order to convict of Class A robbery, the State must demonstrate: 1) a taking of property, and 2) serious bodily injury or death. In order to convict of felony murder here, the State must demonstrate: 1) a taking of property, 2) serious bodily injury or death, and 3) death. It is of no moment that death may satisfy both the second and third elements of the felony murder. The State must still prove each element to prove felony murder *including a taking.*[6]

However, it becomes apparent to me that the *Games* test simply does not work here. Theoretically, felony murder, as per its statutory elements, merely requires that *any* of the enumerated felonies be committed or attempted and that a human being is killed. I.C. 35–42–1–1 (Burns Code Ed.Repl.1994). Therefore, each of the enumerated felonies is an included offense of felony murder. In order to determine whether felony murder and the underlying felony constitute the same crime, *one must look to felony murder as charged.* Here, however, even if we look to the offenses as charged, we find that they are the same for double jeopardy purposes.

Although decided before *Games,* our Supreme Court addressed an analogous situation in *Buie v. State* (1994) Ind., 633 N.E.2d 250. There the court noted that "where the overt act element of the conspiracy charge is the underlying offense, and where the State has obtained a conviction for conspiracy based upon the commission of the underlying offense, the State may not subsequently pursue a prosecution for the underlying offense." *Id.* at 261. The same result would follow if the defendant had been acquitted of the conspiracy charge. *See Redman v. State* (1997) Ind.App., 679 N.E.2d 927, *trans denied.* The Supreme Court has not seen fit to revisit or overrule *Buie.*

---

6. Here, for example, the State has charged Class A robbery resulting in serious bodily injury, not death. However, the State still *must prove every element* of the Class A robbery in order to estab-

lish felony murder. However, as *Games* has so commandingly told us, *we shall not look to the offense as charged.* It does not matter how the State has charged the felony murder.

It appears clear that *Games* has done nothing to disturb prior Supreme Court precedent that the robbery here is a lesser-included offense of the felony murder charge. For this reason, I dissent as to Part I.