**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARK K. PHILLIPS**
Boonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRANDON McMANOMY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 65A01-1302-CR-62 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE POSEY SUPERIOR COURT
The Honorable S. Brent Almon, Judge
Cause No.65D01-1103-FA-83

**January 27, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Brandon McManomy appeals his conviction of Class A felony attempted murder.[1] He raises three issues, which we consolidate and restate as:

1. Whether the evidence was sufficient to support McManomy's conviction; and

2. Whether the trial court erroneously limited the testimony of McManomy's expert witness.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On February 3, 2011, Posey County Sheriff's Deputy Daniel Montgomery and Indiana State Trooper Kyle Compton went to the home of McManomy's father, Brad, to serve an arrest warrant on McManomy. Deputy Montgomery told Brad he had a warrant for McManomy's arrest. Brad reported McManomy was in the basement and took the officers there.

Deputy Montgomery saw McManomy "sitting, laying on the couch and as we come down, he kind of jumped, stood in the middle of the room." (Tr. at 130.) McManomy "was very agitated at the start – yelled at his dad for letting us in the house and I saw him have something clenched in his fist hiding behind his right leg." (*Id.* at 131.) What McManomy had was a knife, around which he clenched his fist as he continued to yell and sway back and forth. As other officers attempted to calm McManomy by talking to him, Deputy Montgomery unsnapped his Taser. McManomy cut himself in the neck with his knife, and Deputy Montgomery used his Taser on McManomy. McManomy fell to the floor, then got

---

[1] Ind. Code § 35-41-5-1 (attempt); Ind. Code § 35-42-1-1(1) (murder).

back up. Deputy Montgomery again used his Taser, but the second shock appeared to have no effect on McManomy. Deputy Montgomery then placed the Taser on McManomy's back and activated it. McManomy fell to the ground, but again stood back up, swinging his knife at Deputy Montgomery's neck, face, and chest. McManomy pinned Deputy Montgomery against a chair. Deputy Montgomery "hit him again with the Taser and dropped and then as soon as he went to the ground that time me and Compton jumped down there, took the knife away, Trooper Compton threw it behind us and then we rendered first aid." (*Id.* at 134.)

Deputy Montgomery "saw blood dripping off my chin and puddling underneath my knees, between my knees and I knew that I was cut." (*Id.* at 135.) Deputy Montgomery sustained lacerations to his face and neck and received thirty-two sutures.

The State filed a motion *in limine* to limit the testimony of McManomy's expert witness "concerning the intent of [McManomy] or any arresting officer or any opinion concerning how the use of the Taser would affect [McManomy] in this cause, including any written report or 'opinion' of Dr. Barbara Weakley-Jones." (Appellant's App. at 32.) The trial court granted the motion. A jury found McManomy guilty.

## DISCUSSION AND DECISION

1. Sufficiency of the Evidence

When we review the sufficiency of evidence supporting any conviction, we do not reweigh the evidence nor judge the credibility of the witnesses. *Arthur v. State*, 499 N.E.2d 746, 747 (Ind. 1986). We consider only the evidence favorable to the State, together with all reasonable inferences drawn therefrom. *Id*. If there is substantial evidence of probative

3

value supporting each element of the crime charged, we will affirm the conviction. *Id.*

A person commits murder when he "knowingly or intentionally kills" another person, Ind. Code § 35-42-1-1, and a person attempts to commit a crime when "acting with the culpability required for commission of the crime, [he] engages in conduct that constitutes a substantial step toward commission of the crime." Ind. Code § 35-41-5-1.

McManomy contends the State did not prove he acted with the intent to kill Deputy Montgomery, and the evidence demonstrated only that he intended to hurt himself. Intent to kill can be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily injury. *McGee v. State*, 699 N.E.2d 264, 265 (Ind. 1998).

McManomy cut through three layers of Deputy Montgomery's clothing and slashed his face twice, resulting in injuries requiring thirty-two stitches. Deputy Montgomery testified that McManomy started swinging at him with a knife and continued to do so as McManomy pinned him to a chair. The Deputy was able to block some of McManomy's blows, but McManomy continued to swing the knife. There was ample evidence McManomy directed his knife toward Deputy Montgomery in such a manner that the jury could infer McManomy intended to kill Deputy Montgomery. *See Vance v. State*, 620 N.E.2d 687, 690 (Ind. 1993) (evidence sufficient to support attempted murder conviction when intent was displayed through "knife-wielding" of Vance's accomplice).[2]

---

[2]  McManomy suggests his own injuries left him without the ability to form intent to kill. He offers no authority to support the apparent premise that an injured person cannot intend to kill someone else, and we decline to so hold.

2.      Limitation of Expert Testimony

McManomy's expert witness, Dr. Barbara Weakley-Jones,[3] offered opinions regarding

the effects of a Taser, including:

> A Taser device is a human electro muscular incapacitation device which temporarily overrides the control systems of the body to impair muscle control. The tasing would make it difficult to impossible for purposeful movement of the defendant while the Taser electrodes were attached and still providing electrical stimulus. . . . The reports all state that each time [McManomy] was tasered, that he fell to the ground, incapacitated for a short period of time and then started to stand up, swinging the knife as to keep them away and not necessarily approaching the officers and then continued to injure himself. After being tasered and loosing so much blood from the neck injury, it would be difficult to determine any intent by the defendant to knowingly attempt to assault the officer, and during the encounter determine whether the act was voluntary or involuntary.

(Exhibit Volume at 1-2.)  The trial court excluded that evidence, but McManomy contends it

was admissible under Evidence Rule 702(a), as the doctor was qualified to render that

opinion and it would assist the trier of fact.

We review evidentiary rulings for an abuse of discretion.  *Mogg v. State*, 918 N.E.2d

750, 755 (Ind. Ct. App. 2009).  An abuse of discretion occurs when the trial court's decision

is clearly against the logic and effect of the facts and circumstances before it.  *Id.*  In

determining whether the trial court abused its discretion, we do not reweigh evidence and we

consider conflicting evidence in a light most favorable to the trial court's ruling.  *Id.*

Dr. Weakley-Jones' proffered testimony addressed whether someone experiencing

blood loss and use of a Taser could form criminal intent.  The trial court did not err in

---

[3] The doctor's name is spelled in different ways throughout the briefs and transcript.  We adopt the spelling used in a letter from Dr. Weakley-Jones to McManomy's counsel.

limiting her expert testimony. Evidence Rule 704(b) provides: "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." McManomy attempted to introduce evidence that "after being tasered and loosing [sic] so much blood from the neck injury, it would be difficult to determine any intent by the defendant to knowingly attempt to assault the officer." (App. at 30) (italics omitted). This was impermissible testimony as to McManomy's intent, and the trial court did not err in excluding it. *See Moore v. State*, 771 N.E.2d 46, 56 (Ind. 2002) (doctor's opinion as to what Moore was thinking when he shot a police officer "would have directly reflected on [Moore's] intent, guilt, or innocence, and thus was an inadmissible conclusion regarding intent)." The limitation of the expert's testimony was not an abuse of discretion.

## CONCLUSION

The State presented sufficient evidence McManomy committed attempted murder when he attacked Deputy Montgomery with a knife, and the trial court did not abuse its discretion when it granted the State's motion in *limine* to prevent McManomy's expert from testifying about McManomy's intent. Accordingly, we affirm.

Affirmed.

VAIDIK, C.J., and RILEY, J., concur.